## AURAND v INDUSTRIAL COMMISSION

Ohio Appeals, 2nd Dist, Franklin Co

No 2783. Decided June 19, 1937

Cowan, Adams & Adams, Columbus, for appellee.

Ralph J. Bartlett, Prosecuting Attorney, Columbus, Wm. C. Bryant, Columbus, and Edmond B. Paxton, Asst. Pros. Attorneys, Columbus, for appellant.

## OPINION

By GEIGER, J.

This cause comes into this court upon appeal from the Court of Common Pleas of Franklin County, Ohio, on questions of law and involves question of whether or not the court below erred in refusing to grant a new trial to the plaintiff below where,

by consideration of a jury, she recovered a judgment against the defendant.

## THE PLEADINGS.

In the court below the petition alleges that the decedent Lester Aurand was in the employ of J. C. Root, operating a bread truck in the City of Columbus for his said employer; that the employer had complied with the Workmen's Compensation Law; that on June 30, 1934, while operating said bread truck and while covering his route in the City of Columbus in the course of his employment the decedent suddenly sustained a sunstroke or heatstroke; that on said day he was subjected to an unusual amount of heat from the hot bread in the truck and from the inability to ventilate said truck and from the effect of the hot sun in heating the bread in the truck, all of which resulted in the sunstroke or heatstroke, from the effect of which he died on June 30, 1934. The plaintiff prays that she be awarded compensation.

The defendant answers, admitting certain formal matters and denying all others.

## THE EVIDENCE.

It will not be profitable to set out the evidence at large, but it is sufficient to say that it disclosed the fact that the decedent was in the employ of Mr. Root living in Delaware, Ohio, and there operating a bakery business; that his duty was to haul the bread from Delaware to Columbus on a truck and deliver in Columbus, which was his regular route; that he left Delaware in the morning around five or six o'clock and that the particular day in question was Saturday, on which days the load carried by the decedent was about 40% more than that carried on other days, making for the Saturday delivery about 1000 loaves, including cakes. He operated a one-ton truck with doors in the back from which the merchandise was unloaded. The truck had a closed body with a roof; that on the day in question the proprietor went to Columbus after learning of the sickness of the decedent, taking with him another who finished the delivery. The decedent had been working for Mr. Root about four months, during which time he always seemed in good health, making no complaints. Another witness testified that Saturday is the heavy day, repeating the statement before made that the load on that day was 40% in excess of other days. The decedent had made the trip to Columbus from Delaware on every Saturday during the time that he was employed.

Another witness testified that he was in the employ of Mr. Root and took up the delivery of the bread where it ceased when Mr. Aurand was taken sick. He described the method in which the bread was packed in the wagon, which would indicate that the body of the wagon was quite full when the trip was started and that some bread was piled on the front seat. It was also noted that the windshield could not be opened without the use of a wrench; that when he arrived in Columbus he found the undelivered bread composed a three-fourths load which he then continued to deliver; that when the truck was in the sun the bread became warm and that there was a lot of heat in the back end of the truck which made it "very, very warm"; that the day in question was an "awful" hot day; that the truck was quite a bit warmer than the car in which the witness came with Mr. Root from Delaware. He testified on cross-examination that if there was a large load on the front seat the front door could not be opened; that the Johnson store at which Mr. Aurand took sick was about ten minutes from the last delivery stop.

Mr. Johnson, the grocery keeper to whom the last delivery was made by the decedent describes the sickness of Mr. Aurand, as he observed it, stating that he was a very active man; that in the morning in question he came into the store from the opposite side of the street and asked for a wrench to loosen the floor board in order to get more air, and when he started back to the garage to get the wrench he seemed bewildered and when he came back to take the bread order he seemed to be sick and staggering and went into the back yard in the shade and vomited very freely, after which he came back to take the order and on returning across the street he was staggering and could scarcely get into the store. The doctor was called and pronouncing his trouble heat prostration ordered him taken to the hospital, all this being about 9:30 in the morning of a very hot and sultry day.

The doctor described the condition of Mr. Aurand when he found him at the store of Mr. Johnson, stating that he found a short, obese man in an unconscious condition and that he had a hot, dry skin with a full pulse and labored breathing and a temperature of 106 and that he diagnosed the case as sunstroke. He was sent to the hospital where he died shortly. A hypothetical question was put to the doctor, objected to and objection sustained, the

doctor then stating that his opinion was sustained in the diagnosis of sunstroke because sunstroke is always caused by exposure to excessive heat, and especially when combined with exertion; that the exertion of getting in and out of the truck and the fact that it was loaded with warm bread and had no ventilation would be one of the contributing factors to a sunstroke.

The court charged the jury appropriately at length and there is no criticism lodged against his charge. Among other things the court said of the injury from which the plaintiff's decedent suffered,

"It is not just a mere injury that will be compensable, the injury must be an accidental injury. By 'accidental injury' is meant that which is fortuitous, that which occurs or happens by chance, an injury resulting that could not have been reasonably foreseen or anticipated as probably or likely to occur as a natural consequential result of the work in which the person was then engaged."

He further charged that the decedent must have sustained an accidental injury arising out of his employment and that there must be a causal relationship between the injury, the death and the work in which the decedent was engaged at the time of the occurrence.

The jury returned a verdict for the plaintiff, motion for new trial was filed and overruled and appeal perfected.

## THE LAW.

This case being on the border line, it might be of value to examine the foundation of workmen's compensation. The Constitution uses the phrase "Injuries * * * occasioned in the course of * * * employment." In §1465-68, GC, the wording is "every employee * * * who is injured * * * in the course of employment, wheresoever such injury has occurred, provided the same is not purposely self-inflicted."

Where the cause of death is heat prostration or sunstroke a question might have arisen, in the early interpretation of the law, as to whether such a cause was properly an injury. At the present time it can not be asserted that such occurrences are not "injuries." We find no case in the Supreme Court definitely holding that a heat prostration or sunstroke is an "injury." We do find, however, that in the case of Commission v Hampton, 123 Oh St 500, Judge Marshall refers with approval to the case of Young v Manufacturing Com-

pany, 101 Neb. 696, wherein compensation was awarded for injuries resulting from heat prostration. The recovery was put upon the ground that the circumstances surrounding the workman when in the performance of his duty "acted in conjunction with the forces of nature to cause the injury."

It was early determined in this state in the case of Fassig v State, 95 Oh St 232, that the provision of the Constitution and of the statute in reference to an injury received in the course of employment referred only to an injury which is the result of or arising out of the employment. This principle was reasserted recently in the case of Spicer Mfg. Co. v Tucker, 127 Oh St 421, wherein it was held that the provisions of the section and of the Constitution with reference to injuries received by an employee in the course of employment refer only to an injury which is the result of or arising out of that employment.

We are about to release the case of Andrew T. Rettig v Industrial Commission, (24 Abs 579), in which we hold that the wife of the decedent is entitled to compensation for the death of her husband arising from a sunstroke or heat prostration when he was engaged in his employer's service at a place where, due to peculiar circumstances, the oppressive heat of the day placed upon him a greater hazard than that to which the general public in the community was subjected.

In Commission v Hampton, heretofore cited, it is held,

"An injured employee is entitled to compensation where the injury is indirectly caused by an act of God, if the vis major operates upon the property and facilities of the industry, and the injury results from the fact that the hazards of employment are made active by the force of nature."

In Industrial Commission v Carden, 129 Oh St 344, it is held:

"An act of God does not arise out of earthly employment, but if the employment through its activities, conditions or environment subjects an employee to a greater hazard from the act of God than that to which the general public in the community is subjected, and the employee is injured by the act of God to which he is so subjected, a causal connection between the employment and the injury is thereby established and the case is compensable under the Workmen's Compensation Law."

In the case of **Slanina v Commission, 117 Oh St 329**, it is held:

"In case an employee, in the discharge of the duties of his employment, is injured as a result of the unexpected violence of the force of nature, to-wit, 'a destructive tornado,' where his duties do not expose him to a special or peculiar danger from the elements which caused the injury, greater than other persons in the community, such employee is not entitled to compensation under the Workmen's Compensation Act."

In this case the plaintiff was employed in a shipping department of a corporation dealing in household furniture which it delivered to customers. On the day in question a destructive tornado struck the northern section of the city of Lorain. At that time plaintiff was operating a delivery truck, his company requiring him to make deliveries without regard to weather conditions. During the course of his activities the tornado blew a telephone pole against the automobile in which he was making the deliveries, injuring him. The court held in substance that a tornado is a force of nature which men can not prevent and an employee is ordinarily no more subject to injury than are others, the nature of the employment not subjecting him to any more peculiar risks than any other members of the public might have been subjected to if he had been at the same place at the same time that the accident occurred. Risks to which all persons similarly situated are equally exposed, whether in the employment or not and not traceable in some special degree to the particular employment, are such as are not compensable under the statute of the state. The fact that the injury was caused by the act of God does not, however, necessarily deprive the injured party of the right to recover if the employee's duties exposed him to some special danger not common to the public.

He was denied compensation because his injuries were due to a risk common to the public generally and not increased by the circumstances of the employment and not therefore compensable within the act. There are many other cases to which we have given our attention, many of which can be found collected in 83 A.L.R. p. 236, and also in the A.L.R. Blue Book of 1936, p. 542. It is needless to say that a great variety of facts are presented in these cases and there are many apparent contradictions in the decisions, some cases holding that a death or injury suffered by an employee from sunstroke or heat prostration is compensable without any showing of peculiar conditions or anything other than that he was at the time engaged in his employment. Other cases hold that where the employee is placed at work in a locality in which the heat is intolerable to one not acclimated, the special exposure is an excess of risk over that of the commonality, and death from sunstroke is compensable and that where the employee is exposed to special or particular danger of the elements greater than that to which other persons in the community are subjected, an injury resulting from such exposure is compensable.

It is safe to say that in order to be compensated the injury must be received in the course of employment and be the result of such employment, and such employment must subject the employee to a greater hazard from the acts of God than that to which the general public is subject.

We note the following cases:

**Industrial Commission v Carden, 129 Oh St 344.**

**Commission v Bartholome, 128 Oh St 13.**

**Spicer Mfg. Co. v Tucker, 127 Oh St 421.**

**Industrial Com. v Hampton, 123 Oh St 500.**

**Slanina v Industrial Commission, 117 Oh St 329.**

**Rettig v Industrial Co., Court of Appeals, Franklin Co., O., (24 Abs 579).**

CONCLUSION

In this case the widow of the decedent is entitled to recover if her husband by reason of his employment upon the day in question was exposed to greater hazards from the heat of the day than those to which the general public in the community was subjected. The testimony in the case is such as to make it a border line case.

The decedent had driven from Delaware with a load of bread for delivery in Columbus. It being Saturday the load was heavier than on other days, but he had hauled the same load on other Saturdays. The insistence is that due to the lack of circulation in the car and the heat of the bread, (not the oven heat which had cooled before the bread was loaded) but the heat that came from the sun through the top of the automobile so increased the hazards of this driver over those to which the general public was subjected that his sickness and death falls within the appropriate decisions

covering this point. On the other hand it is urged that he was not then engaged in a different employment than that to which he was accustomed; that the heat of which he complained was the same as that to which any other traveler on the highway would be subjected, and that his exertion due to the delivery of his bread and the operation of his car was not different or greater than that affecting other people engaged in like occupations. It is also urged that the testimony showed that he had not been confined to the heat of the closed car for more than ten minutes when he arrived at the point of his last delivery and that even there he got out of the car and engaged in a number of activities which would give him an opportunity to escape the oppressive heat of the car, and that as a matter of fact his sickness and death had no causal connection with his employment as a driver of a bread wagon.

## CONCLUSION.

While we recognize that this is a very close case and is stretching the protection to be given to the employee ▮▮▮▮▮▮ acting within the scope of his employment, yet we can not disregard the fact that there are questions which should properly be submitted to the jury and that the same were submitted under the fair charge.

The jury having arrived at the conclusion that the widow should be compensated, we do not feel that we as a reviewing court should disturb this verdict.

Appeal dismissed. Judgment accordingly.

BARNES, PJ, and HORNBECK, J, concur.