*501
 
 M a ~R.fitt a t ,t C. J.
 

 William Hampton, while employed by the Groch Coal Company, in Sandusky, Ohio, was killed, and his widow made application for compensation, which application was denied. On appeal to the court of common pleas of Erie county, the court directed a verdict in favor of the Industrial Commission. Error was prosecuted to the Court of Appeals of Erie county, and the judgment of the trial court was reversed and the cause remanded for new trial. A motion to certify the record was filed in this court by the Industrial Commission, and the motion was allowed.
 

 The decedent was employed as a yard foreman, and his duties called him to all parts of the premises, including the warehouse where building materials in which the company dealt were stored in large quantities. The warehouse was a building 23 by 80 feet and 40 or 50 feet high, with building materials stacked to a considerable height on the first floor. These materials were cement, stucco, and other heavy materials. At about 4 o ’clock in the afternoon of June 28, 1924, the decedent was engaged with other workmen in carrying materials from the warehouse and loading the same on a truck. That task had just been completed, when the cyclone of June 28, 1924, struck the city of Sandusky and vicinity, destroying a great many buildings and injuring and killing a great many people. The decedent and other employees, instead of remaining outside in the wind and rain, went into the warehouse, where their duty generally called them. The storm leveled the warehouse to the ground, and incidentally blew over the
 
 *502
 
 building materials, and Hampton was buried beneath them and crushed to death.
 

 In the trial court a motion for directed verdict was made by the Industrial Commission and sustained by the court on the theory that the deceased was not exposed to the danger of the elements any more than other persons in the community, and that his employment did not expose him to special or peculiar danger from the elements.
 

 The Court of Appeals reversed the judgment of the trial court, and was of the opinion that the cause should have been submitted to the jury, because the deceased was killed by building supplies which fell upon him, which were set in motion by the tornado while the deceased was at a place on his employer’s premises where he had a right to be, and while he was performing his duties as such employee, and that his hazard was therefore greater than other persons in the community were subjected to.
 

 The claim was resisted by the Industrial Commission in this court on the same theory as that urged in the motion for directed verdict, viz., that the falling of the warehouse was caused by an act of God, that Hampton’s employment required him to be in the yard, and that he was oply in the building as a refuge from the storm.
 

 There are two questions to be answered: (1) Was Hampton injured in the course of the employment? (2) Did his injury arise out of the employment?
 

 In answer to the first question, it must be said that Hampton was not employed exclusively in out-of-doors service, but that he was a yard foreman, and in the discharge of that service was required to be in
 
 *503
 
 and about the warehouse. The last service upon which he was engaged was that of carrying materials from the warehouse and loading them upon a truck in the immediate vicinity of the warehouse. It has not been shown in this record that, if he had braved the storm, and had remained outside the warehouse, exposed to the elements, he would have escaped injury and death. It may be, on the other hand, that his position outside the building and in the immediate vicinity of it would have been equally perilous. It is quite certain from this record that his employment did not forbid him to enter the warehouse; neither is it disclosed that any rule or regulation of his employment forbade him to seek shelter from a storm. We must therefore conclude that at 4 o ’clock, p. m., June 28,1924, he had a right to be in the warehouse, and that, even if he were outside of the warehouse when the storm broke, it was not inconsistent with that employment to take refuge in the warehouse. The first question must therefore be answered in the affirmative,.viz., that he was injured in the course of his employment.
 

 Whether his injury arose out of the employment is a question of more difficulty. Some of the authorities hold that, where an employee in out-of-door service was injured or killed by a stroke of lightning, and there were no hazards of the industry which combined with the
 
 vis major
 
 to produce the injury, there can be no recovery. With this general proposition we are disposed to agree. If the employment of Hampton had been in out-of-door service, and he had braved the elements, but had been directly injured or killed by the violent tornado by being picked
 
 *504
 
 up and thrown against a building or tree, his situation would not be different from others in the community and his injury would not be due to any hazard of the employment. Hampton was not directly injured by the storm. His injury and death were caused by the falling of the warehouse, and the collapse of the warehouse was caused by an act .of God. So far as the record shows, the building was strong, and would have been able to withstand ordinary storms. It does not appear that the employer was guilty of any negligent act in placing materials in high stacks. .A tornado causing the collapse of a building is not an ordinary hazard of industry; neither is the collapse of a building from any cause, because buildings ordinarily do not fall. A collapse may be due to any one of a score of causes. It will not be seriously contended that, if the building had collapsed by reason of weakened timbers or trusses, or had been caused by an ordinary storm, an injured workingman whose duty required him to be in the building would receive compensation for his injuries. The general rule is that injuries for which compensation is paid are such as are incidental to or grow out of the employment. No element of negligence need intervene. Compensation is not denied because of contributory negligence on the part of the injured workman, unless his injuries are self-inflicted. The injury to Hampton was not caused by the direct force of the wind upon his person. His injury and death were caused by the collapse of the building, and the falling of the materials upon him, thereby crushing out his life. That the collapse of the building was caused by an act of God does not preclude a recovery,
 
 *505
 
 but only brings tbe case within the range of the rule that there may be compensation when the industry combines with the elements in producing the injury. On principle, we are of the opinion that the industry did combine with the elements in producing the hazard resulting in the injury.
 

 In
 
 State, ex rel. People’s Coal & Ice Co.,
 
 v.
 
 District Court,
 
 129 Minn., 502, 153 N. W., 119, L. R. A., 1916A, 344, compensation was awarded to the driver of an ice company who was required to follow a fixed route in substantial disregard of weather conditions, though permitted to seek shelter in times of necessity. During a severe-rainstorm accompanied by lightning he left his team and went to a tall tree for protection, and while in that position lightning struck the tree and he was killed. This case on casual reading seems to go farther than the general rule of authority, but the reasoning of the opinion brings it within the general rule. It is said in this case, at page 503 of 129 Minn., 153 N.
 
 W.,
 
 119:
 

 “If the deceased was exposed
 
 to
 
 injury from lightning by reason of his employment, something more than the normal risk to which all are subject, if his employment necessarily accentuated the natural hazard from lightning, and the accident was natural to the employment, though unexpected or unusual, then a finding is sustained that the accident from lightning was one ‘arising out of employment.’ ”
 

 The decision in the Minnesota case stressed the point that, by reason of the workman being exposed to all kinds of weather, it was permissible for him to seek shelter from storms.
 

 In
 
 Matter of Madura
 
 v.
 
 City of New York,
 
 238
 
 *506
 
 N. Y., 214, 144 N. E., 505, compensation was awarded to a laborer in the employment of the city of New York, who was killed by a stroke of lightning while taking shelter under a tree during a thunderstorm. The opinion stresses the fact that he had received specific instructions to remain at his place of employment in order to perform certain duties when the storm had passed.
 

 In
 
 De Luca
 
 v.
 
 Bd. of Parle Commrs. of City of Hartford,
 
 94 Conn., 7, 107 A., 611, an employee of a city, engaged in raking leaves in the public park, sought shelter under a tree during a violent thunderstorm and was struck by lightning. Compensation was awarded upon the principle that, when one is engaged in out-of-door employment, seeking and obtaining shelter is within the scope of the employment and a necessary adjunct to his continuing such employment. There is further discussion about shelter from the storm being necessary to the preservation of the health of employees, thereby promoting the business of the master. This case goes much farther than we are required to go in the instant case, and the court does not at this time commit itself to that doctrine.
 

 In
 
 Larke
 
 v.
 
 John Hancock Mutual Life Ins. Co.,
 
 90 Conn., 303, 97 A., 320, L. R. A., 1916E, 584, compensation was awarded for injury resulting from frostbite. In that case the opinion discusses the element of the unusual exposure of the deceased due to his employment.
 

 In
 
 Young
 
 v.
 
 Western Furniture & Mfg. Co.,
 
 101 Neb., 696, 164 N. W., 712, L. R. A., 1918B, 100, compensation was awarded for injuries resulting from
 
 *507
 
 heat prostration. The recovery was pnt upon the ground that the corrugated sheet iron in the building, the tarred roof, the poor ventilation, and the dust and particles of metal in the air, all acted in conjunction with the forces of nature to cause the injury.
 

 Each of the foregoing cases was defended on the ground that the injury was caused by the forces of nature and not a natural hazard of the employment, and that there could therefore be no recovery. In-each instance, however, a recovery was awarded because certain hazards of the industry itself combined with the operation of the forces of nature to cause the injury.
 

 Other cases are more directly parallel to the instant case. In
 
 Reid
 
 v.
 
 Automatic Electric Washer Co.,
 
 189 Iowa, 964, 179 N. W., 323, a factory foreman was killed while closing the windows of a factory, under general orders so to do upon the approach of a storm. The debris torn by the storm from the higher parts of the building crashed through the windows causing his death. The opinion stresses the fact that the deceased was not injured by the direct force of the wind, but by the falling of the debris. The court quoted with approval
 
 Pace
 
 v.
 
 Appanoose County,
 
 184 Iowa, 498, 168 N. W., 916, in which it was declared that there must be a causal connection between the conditions under which the work is required to be performed and the resulting injury.
 

 In
 
 Southern Surety Co.
 
 v.
 
 Stubbs,
 
 (Tex. Civ. App.), 199 S. W., 343, compensation was awarded to an employee on a dredgeboat, who was drowned when the boat was capsized during a storm, although
 
 *508
 
 the boat was not at that time actually in service. In that case the court went much farther than is necessary to
 
 go
 
 in the instant case.
 

 The
 
 Stubbs case
 
 was followed, and for the same reason, in
 
 Southern Surety Co.
 
 v.
 
 Nelson,
 
 (Tex. Civ. App.), 223 S. W., 298. Defense was made on the ground that death was caused by an act of God.
 

 All the foregoing cases involve what is known in law as an act of God. The principle is well settled that injury or damage caused exclusively by the violence of nature is not compensable. This is true in a tort action, in claims against common carriers, and perhaps in other classes of cases where negligence is the basis of the action. It is true, though perhaps to a lesser extent, in workmen’s compensation cases. It is equally well settled that, if the resulting injury is in part produced by the wrongful or negligent act of any person, such person will be held liable. In all of the cases' cited and discussed, as well as in the instant case, there has been a concurrence and a combination of the violence of nature with the ordinary hazards of the industry.
 

 In
 
 Slanina
 
 v.
 
 Industrial Commission,
 
 117 Ohio St., 329, 158 N. E., 829, compensation was denied an employee injured in the same tornado involved here, that of June 28, 1924. There the employee was delivering merchandise in the course of his employment and was injured by a telephone pole being blown down and falling upon the auto in which he was riding. In that case, in the opinion of Day, J., it is said, at page 333 of 117 Ohio State, 158 F. E., 82?, 831:
 

 “The fact that the injury was caused by the act of
 
 *509
 
 God does not, however, necessarily deprive the injured party of the right to recover under the Workmen’s Compensation Act, if the employe’s duties exposed him to some special danger not common to the public.”
 

 The facts of the instant case come clearly within the language quoted.
 

 In
 
 Thom
 
 v.
 
 Sinclair,
 
 [1917], A. C., 127, Ann. Cas., 1917D, 188, it was held by the English House of Lords that, where a person working in a shed is injured by the fall thereon of a wall on adjacent premises not belonging to the employer, the accident is one arising out of and in the course of the employment, within the Workmen’s Compensation Act.
 

 We are unable to see how the instant .case differs in any particular from the English case. The fact that it is an English case does not in the least detract from its value as an authority. The sole question in that case was whether the accident was one arising out of and in the course of the employment. We are of the opinion, therefore, that, under both English and American authorities, there was evidence which should have been submitted to the jury, that the judgment of the Court of Appeals in reversing the court of common pleas was correct, and that its judgment should be affirmed.
 

 Judgment affirmed.
 

 Aulen, Kinkade and Robinson, JJ., concur.