McCALEB, Justice.
On March 12, 1940, a severe tornado or cyclone passed through a part of the City of Shreveport. Entering the City from its west side, the cyclone traveled easterly on a path approximately one half mile., wide through a thickly settled section and. *362 caused considerable damage to property, killing ten persons and injuring fifty others.
The defendant, Caddo De Soto Cotton Oil Company, Inc., owned and operated a plant in the City of Shreveport which was directly in the path of the cyclone. William Crawford, an employee of the defendant, was working in defendant’s hull house at the time the cyclone struck. The force of the wind demolished this building and Crawford met his death as a result of its collapse. The hull house was a two-story building constructed in 1924, or sixteen years previous to its demolition. It was forty-eight feet wide, two hundred and sixteen feet long and was used for storage purposes. It was without partitions, being of the warehouse type, but various joists, columns, girders and outside walls supported the second story and roof. At the time of the accident, sixteen hundred tons of cottonseed hulls were stored in the second story of the building and, when it collapsed, Crawford, who had been working on the ground floor, was buried under the debris.
After Crawford’s death, the plaintiff, a sister of the deceased who was dependent upon him for support, brought this suit in Caddo Parish under the provisions of the Employers’ Liability Act, Act No. 20 of 1914, to recover compensation from the defendant. Liability was resisted by the defendant upon two grounds: (1) That since Crawford left a widow and minor child, plaintiff, as the deceased’s sister, was not entitled' to compensation under the statute, and (2) that, at all events, no compensation was legally due because Crawford did not meet his death as a result of an accident arising out of his employment but as a consequence of an act of God.
The widow and child of Crawford intervened in the proceedings in the District Court claiming that they were entitled to the compensation. After the pleadings were filed, the widow, admitting that she .was not a legal dependent, abandoned her personal claim to compensation but asserted that her minor child was entitled to it:
On the issues above set forth, the case was thereafter submitted to the District Judge for his decision on a stipulation of ' facts supplemented by oral testimony and he found that the plaintiff was the sole legal dependent of the deceased entitled as such to the compensation provided by law. Accordingly, judgment was rendered in plaintiff’s favor and the intervention of the widow and child" of the deceased was dismissed. From this judgment, the defendant alone prosecuted an appeal to the Court of Appeal for the Second Circuit.
Thereafter, the Court of Appeal, by a two to one decision, reversed the finding of the District Court and held that there could be no recovery because the accident causing the decedent’s death did not arise out of or as an incident to his employment with the defendant, but solely as a consequence of an act of God having no connection whatever with the employment.
After the judgment of the Court of Appeal became final, the plaintiff applied to this Court for a writ of review. The writ *363 was granted and the matter is now before us for decision.
There is no dispute between the parties with respect to the hazardous character of the defendant’s business, the employment and weekly wage of the deceased, and it is also admitted that the latter was killed while performing duties in the course of his employment. The defendant, however, claims that the plaintiff is not entitled to compensation for two reasons: (1) Because the death of Crawford resulted from an act of God and did not arise out of his employment, and (2) if it be held that the decedent’s death is compensable, the demands of plaintiff must be rejected because of the existence of Crawford’s minor child, even though the latter is not entitled to compensation.
We shall discuss these contentions in their respective order.
The opinion of the Court of Appeal sustained the defendant’s first contention. The majority of the Court held that Crawford’s death was solely attributable to the cyclone which caused the defendant’s building to fall and that the fact that the employee was working in the building at the time it was demolished had no causal connection with his death, since the cyclone was severe in its force and destroyed or damaged most of the property which happened to be in its path. In other words, it found, as a fact, that Crawford was subjected to no greater hazard from the cyclone by reason of his employment than that to which the general public was exposed. On the other hand, the dissenting Judge, while coinciding with his colleagues with respect to the law applicable to the case, disagreed with them as to their conclusion in applying the law to the undisputed facts. He pointed out in his dissenting opinion that, since it was shown that the hull house in which Crawford was required to work was a large building unprotected by partitions and heavily loaded with 1600 tons of cottonseed hulls in the second story, the hazard to the deceased in case of a cyclone was vastly greater than that encountered by the general public.
It is stated by the majority opinion of the Court of Appeal that this case is one of first impression in the courts of this State. While it is true that this is the first time that a compensation case has arisen involving a tornado or windstorm, there have been cases presented to our Courts of Appeal respecting' liability for accidents arising as a result of the natural elements. In Gasca v. Texas Pipe Line Co., 2 La.App. 483, the question involved was whether the death of an employee killed by lightning was compensable. The court there held in the affirmative because it was found that the conditions to which the decedent’s' employment subjected him increased the risk from lightning and that there was, therefore, a sufficient causal connection between the employment and the accident. And in Lebourgeois v. Lyon Lumber Co., 6 La.App. 216, and Fontenot v. Lyon Lumber Co., 6 La.App. 162, the Court of Appeal for the First Circuit, following the decision in the Gasea case, held to the same effect.
*364 A review of the general jurisprudence on the subject reveals the courts of this country have experienced some difficulty in determining what is or what is .not “an accident arising out of” the employment in various compensation cases. The first case in Louisiana on the question is that of Myers v. Louisiana Railway & Navigation Co., 140 La. 937, 74 So. 256, 258, where, in speaking of a compensable accident, it is said:
“It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.”
With respect to accidents which result from the elements or acts of God, 71 Corpus Juris 757, informs:
“In order that harm which results to an employee by reason of his exposure to the weather or natural elements may be compensable as an injury arising out of .and in the course of his employment, the exposure of the employee by reason of his .employment must be greater than that of .other persons in that locality.”
' This doctrine has been generally applied by the courts of this country. The cases are legion on the subject and it would 'serve no useful purpose to cite them here. As a matter of fact, the test applied in most cases, where the accident originates from a force disconnected with the employment, is whether the employee is exposed to greater danger because of his employment than that to which the public is_ subjected. And this is true whether the force which caused the accident is an act of God or the act of a third person.
However, the test above stated has not been uniformly followed by this Court. On the contrary, in Kern v. Southport Mill, 174 La. 432, 141 So. 19 (the latest authority of this Court on the subject), we adopted a broader view with respect to the test to be applied in determining whether an accident “arises out of” the employment. In that matter, the employee had been sent by his superiors to perform work outside of the mill where he was employed and, on returning to the mill, he stepped out of a street car into the path of an automobile, which struck and injured him. The question presented was whether the accident was one arising out of the employment. The defendant maintained that the accident was occasioned by a risk, common to all, disconnected with its business and that the hazard to which the employee was exposed was no greater than that to which the general public was subjected. When the case reached,the Court of Appeal for the Parish of Orleans, that Court (see Kern v. Southport Mill, 19 La.App. 338, 136 So. 225), applying the test adopted by most of the courts, held that, since the accident was one which arose from a traffic hazard to which the public generally was subjected, the peril to Kern was not increased by reason of his employment and that, therefore, there could be no recovery. However, this Court, on writ of review, reversed the judgment of the Court of Appeal and announced the following liberal rule of. interpretation of the *365 meaning to be given to the applicable language of our compensation statute:
“* * * the statute further requires that the accident must also ‘arise out of’ the employment. By which is meant, that the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed.
“But time, place, and circumstance must determine this. When the ill-fated Titanic foundered in the spring of 1912, all persons aboard her were situated exactly alike as to time and place; but they were not all situated alike as to circumstance. Those who traveled for pleasure were present of their own free choice alone; those who traveled for business, whether their own or that of another, were there of necessity.- And, when one finds himself at the scene of accident, not because he voluntarily appeared there blit because the necessities of his business called him there, the injuries he may suffer by reason of such accident ‘arise out of’ the necessity which brought him there, and hence ‘arise out of’ his- employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.
“In determining, therefore, whether an accident ‘arose out of’ the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer’s business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer’s business reasonably require that the employee be at the place of the accident at the time the accident occurred?
“The question whether or not the employee might have been injured in the same way, and even at the same place and time had he not been called there by the necessities of his employer’s business, but had gone there only for his own pleasure or in pursuit of his own business, has nothing whatever to do with the case. It was his employer’s business which called him to the place and. time of the accident and not his own pleasure or business; and hence his injuries arose out of his pursuit of his employer’s business and not out of his pursuit of his own business or pleasure.” (Italics by the Court) 174 La. 437, 438 and 439, 141 So. 21.
It will be seen from the foregoing that this Court has enunciated a view with respect to the meaning of the words' “arising out of” as used in our compensation statute which is considerably broader than the 'interpretation placed upon similar language by other State courts.
■ A careful reconsideration of the Kern case impresses us with the soundness of the ■opinion, for, when we delve into the underlying theory upon which workmen’s compensation laws have been enacted, we believe that it is in keeping with the spirit of such statutes to resolve that any accident which befalls an employee, in consequence of a force to which he is subjected because •.he is required to be at a particular place at .the time the force exerts itself, is one aris *366 ing out of and having causal connection with the employment. With due deference to the jurisprudence to the contrary, it seems to us that the laborious efforts of some of the courts in weighing the evidence in order to discern whether the hazard to the employee has been increased by reason of the employment are tenuous and involve considerable guesswork and conjecture on the part of the judges. This is clearly demonstrated here by the divergent conclusions reached by the judges of the Court of Appeal which resulted from their attempt to apply the test adopted by other courts to the undisputed facts of this case. Can it be fairly said that, if the deceased in the instant matter had not been pursuing his duties as an employee of the defendant, he would have been subjected to the cyclone? Or, if he had been subjected to it under different conditions, would death have resulted? To resolve that the hazard to him, by reason of his employment, was more, less or equal to that encountered by the public generally, is, we think, venturing into the realm of possibility and would require that the judgment be based upon speculation and uncertainty.
We prefer to place our decision on what we believe to be a sound footing, that is — that the.deceased, by reason of his employment, was required to be in a building which fell upon him; that his death was due to the fact that his employment necessitated that he be at the place where the accident occurred and that, therefore, giving the compensation act the liberal interpretation to which it is entitled, the accident arose out of, and was incident to the employment.
Aside from other considerations, it is apparent from the facts of the case that Crawford’s death arose out of his employment for another reason. The immediate cause of his injuries and death was the fall of the building in which he was working and not the cyclone. It is true that the cyclone may have been the proximate cause (or the cause which set the other cause in motion), since the building loaded with 1,600 tons of cottonseed hulls was unable to withstand the force of the wind. But the cyclone was not the sole cause. Under such circumstances, it is recognized that the accident is compensable.
In Industrial Commission of Ohio v. Hampton, 123 Ohio St. 500, 176 N.E. 74, 76, the Supreme Court of Ohio was presented with facts quite similar to those appearing in the case at bar. There, the decedent was killed when a large house, in which he had taken shelter and in which large quantities of heavy building materials were stored, fell as a result of a violent storm. The Court, in holding that the employee’s death was compensable, said:
“The general rule is that injuries for which compensation is paid are such as are incidental to or grow out of the employment. No element of negligence need intervene. Compensation is not denied because of contributory negligence on the part of the injured workman, unless his injuries are self-inflicted. The injury to Hampton was not caused by the direct force of the wind upon his person. His injury and death were caused by the collapse of the building, and the falling of the materials upon him, thereby crushing out his life. *367 That the collapse of the building was caused by an act of God does not preclude a recovery, but only brings the case within the range of the rule that there may be compensation when the industry combines with the elements in producing the injury. On principle, we are of the opinion that the industry did combine with the elements in producing the hazard resulting in the injury.”
Being of the opinion that the death of Crawford is compensable, we take notice of the other contention of the defendant that the plaintiff, as the dependent sister of the deceased, is not entitled to recover because of the existence of a minor child who is admittedly not entitled to the benefits granted under the law. Counsel for the defendant preface their remarks on this point with the concession that the question has already been decided adversely to their -contention by this Court in the case of Bradley v. Swift & Co., 167 La. 249, 119 So. 37. They, however, tell us that the decision in that case in incorrect; that it should be overruled and that the language •of Subdivision 8 of Paragraph 2(E) of Section 8 of Act No. 20 of 1914, as amended, Act No. 242 of 1928, p. 360, if properly interpreted, plainly excludes dependent brothers or sisters from maintaining an action where the deceased is survived by a widow •or child who are not entitled to recover. .
It suffices to say that we see no merit in this argument and we adhere to views expressed by us in the Bradley case.
For the reasons assigned, it is ordered that the judgment of the Court of Appeal for the' Second Circuit be annulled and reversed and that the judgment of the District Court be and it is affirmed. The defendant,Caddo De Soto Cotton Oil Co., Inc,, is to pay the costs of this proceeding and all other costs.
O’NIELL, C. J., does not take part