BARRETT DIVISION, ALLIED CHEMICAL & DIE CORP., APPELLEE, *v.* OWENS, APPELLANT.

(No. 5197—Decided February 15, 1960.)

*Messrs. Marshall, Melhorn, Bloch & Belt* and *Mr. Howard VanAntwerp, Jr.,* for appellee.
*Messrs. Green & Kreutz,* for appellant.

SMITH, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Lucas County disallowing the claim of appellant to participate in the State Insurance Fund, upon an appeal to said court by the employer, Barrett Division, Allied Chemical & Dye Corporation, appellee in this court.

Trial was had to the court, a jury having been waived. At the conclusion of the claimant's case and before the employer submitted a defense, the court granted the motion of the employer for judgment in its favor and against claimant on the grounds that claimant had not sustained an injury in the course of and arising out of his employment. Upon request of claimant, the court made separate findings of fact and conclusions of law. In granting the motion, in support thereof the court relied on the case of *Walborn* v. *General Fireproofing Co.,* 147 Ohio St., 507, 72 N. E. (2d), 95.

By stipulation of the parties and the evidence adduced by claimant on his case, the record shows the following facts: The employer, at all times material to the action, was an employer within the meaning of the Workmen's Compensation Act of Ohio and was amenable thereto, having complied therewith by paying premiums into the State Insurance Fund. On and prior to March 27, 1955, the date the alleged injuries were sustained, claimant was employed by the employer in its Glendale Avenue plant in Lucas County, Ohio. Claimant, on May 6, 1955, filed with the Industrial Commission of Ohio an appli-

cation for compensation for injuries alleged to have been received by him in the course of and arising out of his employment. Thereafter, a hearing was had before the District Board of Claims, which disallowed the claim. An application filed July 7, 1955, with the Industrial Commission for reconsideration was, on July 21, 1955, dismissed, and the order of the Regional Board affirmed. Thereupon, claimant filed a timely application for rehearing of the claim, which was heard by the Industrial Commission on September 13, 1955. An order followed on November 9, 1955, by the commission revoking the order of the disallowance of the claim, and the claim was allowed, with compensation to be paid for days lost due to the injury.

The record shows further that claimant, on the night of March 26, 1955, rode to work in an automobile with a fellow employee, which automobile was driven into and parked in a parking lot located on the employer's premises and provided by the employer for the use of its employees. The claimant entered the plant building where he commenced his work at 12:00 midnight, and his shift ended at 8:00 a. m. Sunday morning, March 27, 1955. Claimant left the plant building and was enroute to the parking lot. The only route provided on the plant premises by the employer for the use of claimant and other employees was a driveway between the plant building and the parking lot. The driveway had no adjacent sidewalks, being used for vehicular traffic as well as for pedestrians, and was surfaced by blacktop or macadam material. While walking along this driveway, appellant slipped on some ice that had accumulated in a depression, which was covered with a thin layer of snow, causing him to fall on his back and head, resulting in injury.

The witness, DeStazio, a fellow employee and a union steward, testified:

"Why, I was walking along with Art Owens there, side by side; he was on the left of me as we was walking out, and we were talking just normal talk of things, and all of a sudden why his feet went out from under him and he landed right flat on his back, sort a like his tailbone hit first and then bounced on his head."

He was asked: "Were there any other characteristics in connection with this immediate area in which Mr. Owens fell?"

He answered: "Yes, because I recall when it rained we would have to try to dodge around it because there was a depression sort of there. * * * Well, it has always held water, snow and ice."

Further questions and answers developed the following:

"Q. So that you had many occasions to see this immediate spot in which Mr. Owens fell? A. Yes, sir.

"Q. Did you ever make mention of this immediate area to the company? A. During ice and snow I did.

"Q. Was this prior to the accident? A. Yes, sir.

"Court: You spoke about a depression in the surface of the pavement where Mr. Owens claims he sustained these injuries. How deep was this? Do you mean it was just a depression in the level surface of it or was it a hole in there caused by inclement weather, or something like that? Was there any material out of this or was it just a depression in the surface of the pavement itself? A. There was no material out of it, Your Honor, it was like a dip.

"Court: Well now, you say like a dip. Are you talking about a depression of several inches or is it just one of those irregularities in the surface of the pavement of that kind which is caused where they roll it? A. No, this, Your Honor, I think was a little deeper than that.

"Court: What was the depth of this depression? A. Well, I mean, not knowing actual inches, but when there was water you wouldn't want to walk in it because you would get water over your shoes.

"Q. Now, any others to your recollection? * * * A. It was almost like every ten or twenty feet there would be a spot like that, that is approximately."

The witness testified also that the ice in the depression was covered with a little thin layer of snow and that the driveway was "the only way possible to walk from the factory building to the parking lot"; that the depression or dip, "this particular one happens to be an extra deep one" and "the width of it went up over the center of the drive and I'd say approximately three or four feet" long and "traveling into the center of the driveway." Further, he states that he reported complaints about the condition of ice and snow to the foreman in

charge of his shift "every winter prior to 1955," and, on cross-examination, he had reported it the night before the claimant slipped. He also acknowledged the fact that snow was general throughout the whole community the weekend in question and that it was cold enough to freeze. A clipping from a local newspaper for March 27, 1955, was admitted in evidence without objection reporting a general storm in the plant area. Claimant testified as to the immediate area in which he fell, "That the immediate area had always been a low spot which would gather water in the springtime and in the wintertime the ice would set there."

To accommodate counsel for the employer and his witness, Coleman, of the United States Weather Bureau, counsel for claimant acquiesced to calling the witness for employer out of regular trial order. And since the motion of defense counsel for judgment is directed to the evidence adduced at the conclusion of claimant's case as rested, the testimony of the witness, Coleman, is therefore not here considered on the motion of employer for judgment.

We are in accord with the trial court that the testimony pertaining to a group insurance policy of claimant and the incidents thereto sought to be introduced into the record are irrelevant to the issues in this case. *State, ex rel. Rojc,* v. *Industrial Commission,* 133 Ohio St., 131, 12 N. E. (2d), 411.

The assignment of error by claimant is that the lower court erred in determining and entering judgment that appellant was not entitled to participate or to continue to participate in the State Insurance Fund, upon the ground that claimant was not injured in the course and arising out of his employment and that weather conditions causing appellant's injuries were the result of general weather conditions throughout the area.

It is conceded that an injury was sustained and that the same occurred in the zone of employment. Both have been established without conflict in the evidence submitted by claimant. He slipped on ice and snow and fell, causing injury, compensable in damages if sustained in the course of and arising out of his employment. Such injury comes within the definition in *Davis* v. *Goodyear Tire & Rubber Co.,* 168 Ohio St., 482,

155 N. E. (2d), 889, being "a physical or traumatic damage or harm accidental in character and as a result of external and accidental means in the sense of being the result of a sudden mishap, occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place." It is stated in *Dripps* v. *Industrial Commission,* 165 Ohio St., 407, 135 N. E. (2d), 873, that "the question as to the meaning of the term, 'injury,' has been before this court many times, and it has been consistently held that to be compensable an injury must be accidental in origin and result."

The driveway on the premises of the employer afforded the only means by which claimant could enter or leave his place of employment, and the use thereof in leaving the plant building was in the performance of an implied obligation of his contract, a hazard of his employment which he could not escape, arising out of a condition and environment under the control of his employer and pursuant to the contract of his employment. The hazard of such zone growing out of the conditions and environments of his employment, the injury received by claimant due to such hazards was compensable out of the State Insurance Fund. *Industrial Commission* v. *Barber,* 117 Ohio St., 373, 159 N. E., 363. In *Stevens* v. *Industrial Commission,* 145 Ohio St., 198, 61 N. E. (2d), 198, in the opinion, on pages 200, 201, of Hart, J., it is said:

"The courts of this state have uniformly held that, where the employment of an employee has a fixed situs, an injury, to be compensable, must be suffered by an employee at or near the place of employment or within what is known as the zone of the employment. *Conrad, Admx.,* v. *Youghiogheny & Ohio Coal Co.,* 107 Ohio St., 387, 140 N. E., 482, 36 A. L. R., 1288; *Industrial Commission* v. *Heil,* 123 Ohio St., 604, 176 N. E., 458; *Industrial Commission* v. *Baker,* 127 Ohio St., 345, 188 N. E., 560; *Industrial Commission* v. *Gintert,* 128 Ohio St., 129, 190 N. E., 400, 92 A. L. R., 1032.

"There are three recognized situations which are excepted from this general rule. They are (1) where the employer, as an incident of the employment, provides the means of transportation to and from the place of employment; (2) *where the way used to enter or leave the place of employment is the sole*

*and exclusive means of ingress and egress or where the way of ingress and egress is constructed and maintained by the employer*; and (3) where the employee is charged while on his way to or from his place of employment or at his home with some duty in connection with his employment." (Emphasis added.)

But in the case before us, it is contended that the hazard encountered by claimant was the result of a general snow storm in the vicinity of the plant, which was common to the general public, and that, therefore, the case falls within the holding in *Walborn* v. *General Fireproofing Co., supra* (147 Ohio St., 507). The postulate of the employer is that, but for the storm, claimant would not have been injured.

Hence, an examination of the *Walborn case* is impelled, to ascertain whether it is controlling of the decision in this case. The established law was reiterated that compensation does not follow as a matter of course when an injury is sustained in the zone of employment unless such injury is in the course of and arising out of the employment, and it was held that the claimant was denied compensation for disability resulting from a fall on ice and snow on a parking lot provided by the employer when the condition there was the same as prevailed generally throughout the community and had been caused by a storm during the preceding day and night.

The patent and vital distinction between the *Walborn case* and this case is the basic fact stated in the opinion on page 510 thereof, to wit:

"In the instant case there is *nothing to indicate* that the hazard of snow and ice on the parking lot was *in the slightest degree* different from that experienced by the general public throughout the city of Youngstown that morning. Clearly the plaintiff did not suffer an injury in the course of and arising out of his employment." (Emphasis added.)

To paraphrase the language of the holding in the *Walborn case*, there is evidence in this record to indicate that the hazard of snow and ice on the driveway was in a very substantial degree different from that experienced throughout the vicinity of the plant property that morning. And in this case we have the added factor, not present in the *Walborn case*—a condition of

hazard arising out of claimant's employment which was the result of the combined and concurring acts of the weather and the employer. The facts in the *Walborn case* compelled the conclusion, peculiar to the facts therein—that no other causal relation was present to take the cases out of the common hazard category.

The argument of common hazard is not valid in the instant case. Although the evidence could support the fact that snow and ice were generally prevalent throughout the community, the unusual conditions of the driveway, called to the attention of the employer and under the control of the employer in the zone of employment, were a causation of the accidental injury incident to the employment of claimant in use of the only avenue of ingress and egress to and from his work. To say that the natural phenomenon of a snowstorm under such physical facts defeats the claim, is to extend the theory of act of God beyond its intended sphere.

The established law, by the terms of the Act and the interpretation thereof by the courts, is that a claimant is entitled to compensation for an injury sustained in the course of and arising out of his employment, unless it is self-inflicted. An additional exception is adjudged by the decisions in *Walborn* v. *Fireproofing Co., supra* (157 Ohio St., 507), and *Slanina* v. *Industrial Commission*, 117 Ohio St., 329, 158 N. E., 829, cited as precedent in the *Walborn case*, which cases rest upon the theory that, even though the employee is injured while in the course and arising out of his employment, the employer is not charged with responsibility for injury attributable solely as a result of the forces of nature, and not traceable in some special degree to the particular employment. And to rationalize the theory, it is declared that the employer is exculpated from a risk and danger general in scope to that to which the public is likewise exposed, and not peculiar to or connected with the employment—sometimes briefly referred to as a "common hazard."

The case before us upon its particular facts does not fall into such an unqualified category. The employer provided and maintained a driveway to be used by claimant for ingress and egress to and from his employment. Notwithstanding repeated

complaints, the employer permitted the driveway to exist with a depression deep enough for rainwater to accumulate to a depth over the shoes, and ice and snow in winter weather extending from the side thereof three to four feet to the center. The hazard to the claimant was the result of the combined and concurring acts of the storm and the employer. This was not so upon the particular facts of *Walborn* v. *General Fireproofing Co.*, *supra*, and *Slanina* v. *Industrial Commission*, *supra*.

Not to be committed to such an absolute and intransigent theory of law, it is stated by Day, J., in *Slanina* v. *Industrial Commission*, *supra*, at page 333:

"* * * The fact that the injury was caused by the act of God does not, however, necessarily deprive the injured party of the right to recover under the Workmen's Compensation Act, if the employee's duties expose him to some special danger not common to the public."

Thus it is held in *Industrial Commission* v. *Hampton*, 123 Ohio St., 500, 176 N. E., 74, that an injured employee is entitled to compensation when the injury is indirectly caused by an act of God if the *vis major* operates upon the property and facilities of the industry and the injury results from the fact that the hazards of the employment are made active by the forces of nature. The statement quoted above from *Slanina* v. *Industrial Commission*, *supra*, was approved and followed in *Kaiser* v. *Industrial Commission*, 136 Ohio St., 440, 442, 26 N. E. (2d), 449, where it is said:

"* * * Accidental injuries due to the elements or forces of nature have been compensated when suffered by employees exposed to a greater hazard by virtue of their employment than were other persons in the locality. *Industrial Commission* v. *Carden*, 129 Ohio St., 344, 195 N. E., 551; *Industrial Commission* v. *Hampton*, 123 Ohio St., 500, 176 N. E., 74; *Slanina* v. *Industrial Commission*, 117 Ohio St., 329, 158 N. E., 829; 42 Ohio Jurisprudence, 657, Section 70. * * *"

There is no evidence that the natural phenomenon of the storm which combined with the faulty condition of the driveway to cause the injury was so far outside the range of human experience that ordinary care should anticipate it and take reasonable precautions against the hazards of its foreseeable

consequences. Especially is this true because the employer had been repeatedly warned. The employer intervened as a human agency compounded with the storm to create a hazard not common to the public.

The record shows evidence submitted by claimant at the conclusion of his case sufficient against the motion of employer for judgment.

The judgment of the Common Pleas Court is therefore reversed and the cause remanded to that court for a new trial.

*Judgment reversed and cause remanded.*

Fess and Deeds, JJ., concur.