SLOSS, APPELLANT, *v.* CASE WESTERN RESERVE UNIVERSITY ET AL., APPELLEES.

(No. 48588 — Decided February 19, 1985.)

*Harold Ticktin* and *Sam Handelman,* for appellant.

*Joel A. Makee* and *Walter C. Kelley,* for appellee Case Western Reserve University.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mitchell A. Stern,* for appellee Industrial Commission.

PRYATEL, J. Alice M. Sloss seeks reversal of the summary judgment granted for defendants-appellees Case Western Reserve University (hereafter "University") and the Industrial Commission of Ohio (hereafter "commission"). The judgment had the effect of

denying her workers' compensation for injuries she suffered in a fall in a parking lot as she left her job at the university.

For the reasons given below, the judgment of the trial court is reversed and remanded.

There is no dispute as to the following facts:

Appellant left work at the medical school of the university at about 5:00 p.m. on February 4, 1982. The school is located on Adelbert Road. She walked several blocks to reach her car parked in Lot No. 23 at Mayfield Road and Circle Drive.

In the parking lot, she slipped on a patch of ice and fell, injuring her wrist. (Appellant described the ice as "black ice" because of its "invisibility.")

The parking lot is owned and operated by University Circle, Inc. (hereafter "UCI"), a non-profit corporate entity of which the university is a founding and participating member. The members sit on the board which determines policy and are committed to making up any UCI deficits, including mortgage indebtedness, that may occur. UCI provides parking and other services to the university and other member institutions in the University Circle area.

As an employee of the university, Sloss was given a choice by the university of a number of parking lots with varying rates that are set by UCI. She selected Lot No. 23 in which she has parked since 1967. She pays for parking through a deduction from her pay check from the university. In turn, the university forwards parking fees it has collected to UCI.

Climatological data from the National Climatic Center of the National Oceanic and Atmospheric Administration, submitted with plaintiff's motion for summary judgment, shows that at 7:00 a.m. on the day of the fall there were six inches of snow on the ground, although only two inches had fallen on the previous three days, 1.8 of those inches on the day before the fall; only a trace of precipitation fell during the day; the temperature that day ranged between twelve and twenty-three degrees Fahrenheit, with an average for the day of eighteen degrees; and the sun shone for three hundred twenty-five minutes or for fifty-three percent of the total time that sunshine was possible.

Appellant's claim for workers' compensation was either denied or refused at all levels before the Industrial Commission of Ohio. She appealed to the court of common pleas.

The court denied appellant's motion for summary judgment and granted appellees' cross-motions for summary judgment.

The court concluded that reasonable minds could not find that the injury received occurred within the course of or arose out of appellant's employment. The court based its ruling on the following findings:

"1. The risk that Ms. Sloss encountered was neither distinctive in nature nor quantitatively greater than the risk common to the public.

"2. The lot is not owned, controlled, or supervised by defendant university. Rather, the lot is owned and operated by University Circle, Inc., an entity which provides parking and other services to over thirty organizations in the University Circle area.

"3. The parking lot is several blocks away from the building in which Sloss works. Therefore, the argument cannot be made by Sloss that the parking lot where she was injured was the sole means of ingress and egress to her place of employment.

"4. Sloss was injured while *leaving* work on February 4, 1982. Thus, she was injured after her time of employment, while presumably on her way to a destination totally unconnected with her employment."

In appealing the trial court's judgment, appellant assigns three errors.

Assignment of Error No. I

"I. The trial court erred in ruling that plaintiff Alice Sloss, was not injured in the course of her employment on a parking lot operated on behalf of her·employer, because the lot on which she was injured was not the sole means of ingress and egress to her place of employment and because her injury occurred after leaving her immediate place of employment on February 4, 1982. Otherwise stated the trial court erred in ruling that plaintiff Alice Sloss', admitted injury did not occur in the 'zone' of her employment."

Appellant takes issue with the trial court's ruling that her injury did not occur in the "zone" of her employment. Critical to the analysis that led the court to its ruling is its determination that the parking lot is not owned, controlled, or supervised by the university, that the parking lot was several blocks away, that the parking lot was not the sole means of ingress and egress to her place of employment, and that appellant was injured while *leaving* work.

Neither ownership nor control is necessary to bring a parking lot within the zone of employment. We concluded fourteen years ago that it would be impractical and illogical in a workers' compensation case to apply a principle requiring that there be actual ownership and control of a parking lot in a shopping center consisting of multiple independent businesses. *Frishkorn* v. *Flowers* (1971), 26 Ohio App. 2d 165, 167 [55 O.O.2d 310].

It would be equally impractical and illogical to apply the outmoded control-ownership requirement where, as here, the university participates as described above in a multiple member organization (a non-profit corporate entity) which provides parking for university employees and where that university member gave its employees a choice of lots and collected parking fees through payroll deductions. Even public streets and sidewalks — clearly neither owned nor controlled by any private employer — have been found to be within the zone of employment. *Littlefield* v. *Pillsbury Co.* (1983), 6 Ohio St. 3d 389; *Croft* v. *Krause* (Aug. 9, 1979), Cuyahoga App. No. 38733, unreported, affirmed (Apr. 30, 1980), No. 79-1376, on authority of *Baughman* v. *Eaton Corp.* (1980), 62 Ohio St. 2d 62 [16 O.O.3d 45].

That the parking lot was several blocks away and was not the sole means of ingress and egress is not controlling in the determination of whether it was within the zone of employment. The court's conclusion in *Marlow* v. *Goodyear Tire & Rubber Co.* (1967), 10 Ohio St. 2d 18 [39 O.O.2d 11], is analogous to the situation in the case before us. In *Marlow,* the court rejected the view that an injury outside the immediate premises of the employer could be compensable only if it occurred in connection with a single access to the premises. The court said at 21:

"* * * The point appears to be illogical. If an employer provides two accesses and the employee has his choice, an injury on either may not be compensable because the other was available for use."

We reject that view as did that court. Equally illogical is the contention that to be compensable an injury must occur at or immediately adjacent to the place of employment. Had appellant selected another parking lot from the choice offered by the university and one that was adjacent to the medical school, would her injury be any more compensable under the circumstances of this case? We do not believe that the proximity of the parking lot to the medical school is a relevant consideration in this instance. The appellees cite *Littlefield, supra, Indus. Comm.* v. *Henry* (1932), 124 Ohio St. 616, and *Bralley* v. *Daugherty* (1980), 61 Ohio St. 2d 302 [15 O.O.3d 359], for their contention that the parking lot was too far away to be in the zone

of employment. However, those cases involve injuries in automobiles on roadways, not a parking lot in which the employer had a membership interest.

Nor is it any more relevant that appellant was leaving work rather than arriving there. In *Kasari* v. *Indus. Comm.* (1932), 125 Ohio St. 410, the Supreme Court approvingly cited *Erie RR. Co.* v. *Winfield* (1917), 244 U.S. 170, to the effect that an employee leaving his employment at the end of a day's work is discharging a duty of his employment as "a necessary incident to his day's work." See *Croft* v. *Krause, supra.* The early rule which barred compensation for injuries sustained by workers on their way to work or while leaving work is no longer strictly applied so long as the employee is within the zone of employment. *Littlefield, supra.*

Accordingly, we find the first assignment of error has merit.

Assignments of Error Nos. II and III

"II. The trial court erred in ruling that plaintiff Alice Sloss', admitted injury did not arise out of her employment with her employer, Case Western Reserve University, because the risk or hazard which caused her injury was 'neither distinctive in nature nor quantitatively greater than the risk common to the public.'

"III. The court below erred in granting summary judgment to defendant because there was an issue of fact in dispute, the proof for which redounded entirely in plaintiff's favor."

The trial court relies on *Littlefield, supra,* as do the appellant and the appellees. The court's holding is summarized in its syllabus as follows:

"1. An employee will be entitled to workers' compensation benefits when the employment creates a special hazard and the injuries are sustained because of that hazard.

"2. The special hazard rule applies where: (1) 'but for' the employment, the employee would not have been at the location where the injury occurred, and (2) the risk is distinctive in nature or quantitatively greater than the risk common to the public."

*Littlefield* involved an injury to an employee whose automobile was struck as it waited on a public road to turn left into the employer's property. The employee was returning from a lunch break. It was found the injury occurred in the course of and arose out of the injured employee's employment.

The test for participation in the Workers' Compensation Fund is whether a causal connection exists between an employee's injury and his employment, either through the activities, conditions or the environment of the employment. *Id.* at 391.

The *Littlefield* court explained:

"Young's treatise on Ohio workers' compensation law states that 'the theme of the decisions which have considered the geography aspects of course of employment are uniform in noting that the environment of the employment may extend out beyond the premises of the employer and that the additional territory is described as being within the zone of employment. Environment means the capability of producing injury and it is usually described as the existence of hazards that are peculiar to the employment as contrasted with hazards that are likely to exist anywhere and bear no relationship to the employment.' Young, Workmen's Compensation Law of Ohio (2 Ed. 1971) 83, Section 5.7." *Id.* at 393.

The *Littlefield* court adopted the special hazards rule to allow compensation for injuries occurring off the work premises, before or after work, if the injury occurs because of a hazard created by employment.

As quoted above, the special hazard rule is to apply if but for the employment the employee would not have been at the location where the injury occurred and if

the risk encountered is distinctive in nature or quantitatively greater than risks common to the public.

In applying the test in *Littlefield,* the court concluded that but for his employment the injured employee would not have been making a left turn into the plant. And although the risk attendant to the busy road was a risk common to the general public, the risk of the injured worker was " 'quantitatively greater' than that to which other motorists occasionally driving down the road are subjected." *Id.* at 394.

"* * * The regular exposure to the common risk plus the risk of making a left turn creates a greater degree of risk and sustains the causal relationship between the employment and the accident resulting from the risk." *Id.* at 394.

Applying the same rationale to this case, we conclude that but for her employment, appellant would not have been in the parking lot where the injury occurred.

While turning our attention to the second prong of the Supreme Court's special hazard rule, we also must consider the special rules which have been applied where the forces of nature are involved, as here.

Both appellant and appellees refer us to *Walborn* v. *General Fireproofing Co.* (1947), 147 Ohio St. 507 [34 O.O. 413]. It dealt with an employee who fell on ice in his employer's parking lot, collected insurance benefits based on his claim that his injury was not work-related and then tried to qualify for workers' compensation on the ground that his injury was work-related. The court concluded that the ice and snow which resulted from a general storm the preceding day and night produced a hazard which was not different from that experienced in the whole city. Thus, the *Walborn* court said, the injury was not suffered in the course of and did not arise out of the employment.

Commenting on the *Walborn* case,

the Supreme Court suggested that in view of later cases, "it may be that *Walborn* rests upon a ground no more secure than that which caused the claimant's unfortunate injury in that case." *Marlow, supra* at 24. Since 1947 when *Walborn* was decided, it has been distinguished by its reference to the storm that prevailed generally in the community the day and night before Walborn's fall and factors that combined with weather conditions.

Appellant and appellees agree that the rule now applied generally where the forces of nature are implicated is that those forces must be combined with a defect or condition already present. In *Marlow, supra,* at 24, the Supreme Court noted "that a heavy snow is no more a hazard of the zone of employment than a tornado * * * unless the act of nature operates 'upon the property and the facilities of the industry, and the injury results from the fact that the hazards of the employment are made active by the forces of nature.' " An example cited by the court was *Barrett Division* v. *Owens* (1960), 110 Ohio App. 316 [13 O.O.2d 84], where compensation was granted to an employee who slipped on a layer of snow-covered ice in a depression in the sidewalk leading to a parking lot. In *Roberts* v. *Inland Div., General Motors Corp.* (Aug. 17, 1983), Montgomery App. No. 7871, unreported, the court, in reversing a summary judgment in a case in which an employee fell on ice in a parking lot, concluded that depressions which had to exist for liquid to collect and freeze constituted physical deformities in the zone of employment and were thus hazards of the employment.

Here, the case was submitted to the court on the pleadings, cross-motions for summary judgment, answers to interrogatories posed to the university by appellant, affidavits from appellant and university Vice President Arthur P. Leary, the official weather report and a map of the area of the fall.

Appellant contends there was no evidence of a general storm. The weather data indicates that there were six inches of snow on the ground the morning of the fall and that two of those inches had fallen over three prior days. Only trace precipitation was recorded the day of the accident. But the temperatures were twelve to twenty-three degrees Fahrenheit. The parties contest whether the weather caused a general hazard of ice prevalent in the city on the day of the accident. Appellant averred that as she walked to her car no snow or sleet was falling, no ice or storm was occurring and that the streets and surrounding area had been cleaned and were reasonably clear of snow. She said she fell on an invisible patch of "black ice" that was approximately four by five feet in size. The parking lot, she averred, had been cleared of snow which had been pushed to the sides of the lot.

On the other hand, the university contends there was no difference between the ice conditions on Lot No. 23 and the conditions in the general area. The appellant and appellees differ in their averments as to which UCI members had access to Lot No. 23. Further, the university's affidavit does not address the question of whether the general public was permitted to park in Lot No. 23, although its response to an interrogatory suggests visitors had access to UCI lots. The university asserts that there was nothing unique or distinctive about the patch of ice upon which appellant fell. But appellant's affidavit implies that there were individual differences between the iced area of the parking lot and the rest of the community, and that, therefore, by inference a condition peculiar to the area caused the ice to form where it did in Lot No. 23.

Summary judgment is a procedural device used to terminate litigation where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ. R. 56 provides that summary judgment shall not be rendered unless it appears from the pleading, depositions, answers to interrogatories, written admissions, affidavits, etc., that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. "The moving party carries the burden of proving that no genuine issue of fact exists, and all reasonable inferences shall be resolved in favor of the opposing party." *Dupler v. Mansfield Journal* (1980), 64 Ohio St. 2d 116, 120 [18 O.O.3d 354].

Construing the evidence and reasonable inferences in favor of the non-moving party, we conclude there is a genuine issue of material fact as to the second prong of the *Littlefield* test and the forces-of-nature test: Whether the risk encountered by appellant was distinctive in nature or quantitatively greater than the risk common to the public and whether a defect or condition combined with the forces of nature to create the hazard in Lot No. 23.

We reverse and remand for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

CORRIGAN, C.J., and PATTON, J., concur.