IDA M. YOUNG, ADMINISTRATRIX, APPELLEE, v. WESTERN FURNITURE & MANUFACTURING COMPANY, APPELLANT.

FILED OCTOBER 13, 1917. No. 20078.

Master and Servant: EMPLOYERS' LIABILITY ACT: ACCIDENT. Evidence examined, and found sufficient to sustain the finding and judgment of the district court. *Held*, that the death was an accident within the meaning of the definition given in the employers' liability act (Laws 1913, ch. 198, sec. 52), and that such death grew out of the decedent's employment by the defendant.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*F. M. Hall* and *H. W. Baird,* for appellant.

*Lincoln Frost* and *Guy T. Tou Velle, contra.*

HAMER, J.

The plaintiff, Ida M. Young, administratrix of the estate of Arthur Young, deceased, brought this action in the district court for Lancaster county against the Western Furniture & Manufacturing Company, appellant. It is brought under the employers' liability act (Laws 1913, ch. 198) to recover damages on the ground that the deceased came to his death while in the employ of the defendant and under such circumstances as to make the defendant liable under that act. The evidence shows that the deceased had been employed as a general helper around the defendant's plant for many years. The defendant company was engaged in the business of manu-

facturing mattresses and other articles. The plaintiff's decedent was employed in this branch of the establishment. The briefs for plaintiff and also for appellant speak of the death as occasioned by heat stroke or heat prostration. The evidence shows that the decedent was engaged in cleaning and oiling two motors which were used by the defendant company in its business. These motors were located in the interior of the building on platforms between the ceiling and the floor. The decedent went down from one of the platforms and refilled an oil can, and attempted to ascend the ladder leading to the motors, when he staggered, and, being unable to climb the ladder, the foreman and another employee came to his assistance. They took him out into the air. He said that he wanted to return to work, and they went back with him into the building. He appears to have been only able to wipe his hands on a rag when he fell down again. Later he was taken home, and remained very ill until the time of his death, July 17, 1915. His illness began on the 10th of that month.

In appellee's brief the building where the business of the defendant was carried on is described as being about 55 by 35 feet in dimensions, and constructed of corrugated steel or sheet iron and covered with tarred roofing. The location is said to have been in the southwest portion of the city and lying low with respect to the general elevation. The purpose was apparently to show that the building was located on low ground where the heat might be excessive, and that the building was so constructed that it would be a very hot place to work in. It is said that the roof sloped from a height of about 18 feet on the east side to 12 feet on the west side, and "at such an angle as to allow the sun on a hot July afternoon to concentrate the full force and effect of its rays on said tarred roof." The building seems to have been unplastered. It was divided into four rooms. It is claimed that the deceased met his injury in the room located in the northwest corner of the building. It was the "felt" room where the pick-

ing of the filling for mattresses was conducted. It is claimed by appellee that this room was filled with dust, and that it was customary for the deceased to tie a handkerchief over his nostrils while at work there. While the thermometer stood at about 86 to 87 degrees when Young's attack began, it is claimed that this particular building was "naturally hot in summer." The contention is that a building of sheet iron with tarred roofing and insufficient ventilation, built on low ground, would be a hot place on a summer day in July.

It is contended in the brief of the appellant that the work of cleaning and oiling a motor is not strenuous labor and does not require any great physical effort. The deceased was going about his usual work, and he went about it in his own way, and he had no specific instructions from anybody. It seems that he had been away from his work for three or four days before the fatal attack began. He came back to work on Friday morning, and worked Friday and Saturday morning, and the attack began on Saturday afternoon at 3 or 4 o'clock. It is shown that the deceased may have used intoxicating liquors. He is shown to have used some whiskey at times, which he drank out of a flask, and he had often been seen at saloons in Havelock when Lincoln was dry. He was 57 years of age. It seems that the building in question had been built about 7 years, and that the deceased had worked in it during all of that time. It is claimed that before that time he had worked for the defendant in a hotter building and one more poorly ventilated than the building in question.

On behalf of the defendant it is claimed that the deceased died of heat stroke or sun stroke, and that this sort of illness "is just as much a disease as rheumatism or typhoid." It is thereupon argued that, because it is a disease, death occasioned by it is not an accident, and that the particular section of the statute referred to does not in any way relate to it.

After the evidence was in, counsel for the defendant moved the court for judgment in favor of the defendant on the ground that the petition did not state a cause of action, and that the evidence did not bring the case within the statute. The motion was overruled, and the defendant excepted.

On behalf of the defendant it is strenuously insisted by counsel that Young was not injured in person or body, and that there was no violence to his physical structure, or any disease or infection resulting from his work, and that his sickness or disease, if any, was due to natural causes, and in no way connected with or influenced by his employment, or the character or place of performing his work. It is said that the heat prostration came as a natural result of his own habits and condition of life. It is insisted that there was no accident; that there was no violence to the physical structure of the deceased's body; that the heat prostration resulting in Young's death was due to natural causes; that Young's death did not result from violence nor from the resultant effects of any violence; that his death cannot be said to have occurred in the course of employment because he died seven days after his last work, and that there is no claim that he was in the course of his employment at the time of his death.

Some cases are cited which seem in part to sustain in principle the contention made by counsel on behalf of the defendant, but there is a difference. There would have been no injury if the business had not existed. The heat and humidity, the corrugated sheet iron in the building, the tarred roof, the poor ventilation, and the dust and particles of matter in the air, all acting together caused the sickness that brought about the death of the decedent. A stronger man might have lived, but it is enough that the industry brought about this man's death. An accident is an event which proceeds from an unknown cause, or is an unusual effect of a known cause,

and, therefore, not expected. *Chicago, St. L. & N. O. R. Co. v. Pullman Southern Car Co.*, 139 U. S. 79. An accident is "an event that takes place without one's foresight or expectation, and it may include an injury received by one in a common-law affray, where no fault on his part is shown." *Supreme Council Order of Chosen Friends v. Garrigus*, 104 Ind. 133. An accident is "an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and, therefore, not expected." *Schneider v. Provident Life Ins. Co.*, 24 Wis. 28. "An accident is the happening of an event without the aid and the design of the person and which is unforeseen." *Paul v. Travelers Ins. Co.*, 112 N. Y. 472. "An accident is an event that takes place without one's foresight, or expectation; an undesigned, sudden, and unexpected event." Webster's New International Dictionary. An accident is "an unexpected event which happens as by chance, or which does not take place according to the usual course of things." *North American Life & Accident Ins. Co. v. Burroughs*, 69 Pa. St. 43.

In *Crowley's Case*, 223 Mass. 288, an employee was suffering with syphilis. While employed he suffered a shock which aggravated the disease and resulted in insanity. The court held it to be an accident. It was held: "Since the workmen's compensation act prescribes no standard of fitness to which the employee must conform, and compensation thereunder is not based on any implied warranty of perfect health or immunity from latent and unknown tendencies to disease, where the employee, after an injury received in the course of his employment, developed paralysis, paresis, and insanity, he was entitled to compensation, though previous to the injury, the disease had been present, but latent, and did not impair his ability to work, and was merely made active by the injury."

In *Dotzauer v. Strand Palace Hotel, Ltd.*, 3 B. W. C. C. (Eng.) 387, the court said: "The mere circumstance

that a particular man, in doing work arising out of and in the course of his employment, meets with an accident which a perfectly healthy man would not have met with, is no answer at all. He takes his disability with him, and it is none the less an accident on that account." In that case Dotzauer washed crocks and dishes for the Strand Palace Hotel, Ltd. He put his hands in hot water in which there was soft soap and caustic soda. His finger nails came off, and he was disabled four months and a half. The appellate court reversed the decision of the judge of the county court.

In *Manning v. Pomerene, ante,* p. 127, this court held that, as there was sufficient evidence to support the finding of the district court that the disability was caused by an accident, its judgment would not be set aside. In *Miller v. Morris & Co., ante,* p. 169, the same doctrine was announced.

The finding of the district court is to the effect that the plaintiff is entitled to $5 a week compensation for 350 weeks beginning October 9, 1915, with interest at 7 per cent. per annum from the time the payments became due, together with $100 and interest for funeral expenses. There was judgment accordingly. It is our view that compensation is a charge against the industry because the industry itself is responsible for the injury. As applied to this case, it may be fairly assumed that plaintiff's decedent would not have died at the time he did but for the fact that he went to the factory on a hot day and worked in a heated building. Held the death was an accident in the sense that it was unexpected, and it was not such a result as would naturally follow the employment, but grew out of it, and the decedent died because of it.

The judgment of the district court is

AFFIRMED.

ROSE and CORNISH, JJ., not sitting.

SEDGWICK, J., concurs in the conclusion.