(No. 39223.—

EISNER FOOD STORES, Appellee, *vs.* THE INDUSTRIAL COM-
MISSION *et al.*—(MARY L. WALKER *et al.*, Appellants.)

*Opinion filed November 19, 1965.*

RALPH P. NORTON, of Danville, for appellants.

GIFFORD, MOORE, RODDY & POWER, of Chicago, (JOHN
P. RODDY, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the
court:

The question in this Workmen's Compensation case is
whether the accident which caused death of the claimant's
husband arose out of his employment. The arbitrator de-
cided that it did, and his decision was sustained on review
by the Industrial Commission. The circuit court of Cham-
paign County reversed, and the case is here on appeal.

Lawrence A. Walker, the deceased, was grocery man-
ager of Eisner Store No. 11, a supermarket located in a
shopping center in Rantoul. The building is one story high.
Over the entrance lobby was a sign wall, or pylon, which
rose to a height of 10 to 15 feet above the roof, and ex-
tended about eight feet back from the front wall. It was

partially based on a side wall of the building, and it was constructed of two rows of cement blocks approximately one foot apart. At the time of the accident there was no sign on the wall, but an Eisner sign had previously been there, as had a Piggly-Wiggly sign when that company occupied the building.

On April 30, 1962, the Rantoul area was struck by a severe rain and wind storm. An army meteorologist testified that at Chanute Air Force Base, located two miles south of the Eisner Store, the highest wind speed in twenty-five years was recorded on that date. He also testified that the velocity of the wind varies considerably within a local community and that peak gusts at the Chanute Air Force Base weather station might have varied considerably from peak gusts at the shopping center.

The wind prevented the automatically operated doors of the store from closing. When Walker was last seen alive he was walking toward those doors. He had taken his keys from his belt and had them in his hand when the sign wall toppled over and came through the roof. He was crushed to death by masonry and timbers from the sign wall and the ceiling of the lobby.

This court has both sustained and denied recovery for injuries suffered when an employer's building has collapsed during tornados and severe wind storms. (Compare *Central Illinois Public Service Co.* v. *Industrial Com.* 291 Ill. 256, with *Abell Chevrolet Co.* v. *Industrial Com.* 370 Ill. 460, and *Abell Chevrolet Co.* v. *Industrial Com.* 371 Ill. 76.) In the *Central Illinois Public Service Co.* case, in which recovery was allowed, the court said: "While the risk arising from the action of the elements, such as a cyclone, is such a risk as all people of the same locality are subjected to, independent of employment, yet the circumstances of a particular employment may make the danger of receiving a particular injury through such storm an exceptional risk and one to which the public generally is not subjected. Such in-

jury may be then said to arise out of the employment." (291 Ill. 256, 265.) In that case there were steam pipes and ammonia coils in an area where the deceased was required to work. The court pointed out that "the ammonia fumes and scalding steam contributed most largely to the injuries which caused his death", and that his "duties took him among the steam pipes and ammonia coils, which subjected him to an unusual risk of being injured from escaping steam and ammonia fumes should the building be destroyed by storm." 291 Ill. at 266.

In our opinion the *Central Illinois Public Service Co.* case is controlling here. The sign wall was a structure peculiar to the building occupied and leased by Eisner. Its design and location made it unusually susceptible to wind damage. No other portion of the building was damaged, nor does the record suggest that other buildings in the shopping center were damaged. The commission was warranted in finding that the presence of the sign wall was an "exceptional risk and one to which the public generally is not subjected." Walker's duties took him into the zone of exceptional risk, and his death resulted.

The employer contends that the commissioner who heard evidence on review erred in refusing to admit in evidence certified records of the United States Department of Commerce. These records were offered "to show the widespread areas covered by the storm." They were so generalized that they were at best only dubiously relevant, and in any event the employer was not harmed by their exclusion since the commissioner had already stated for the record, "We accept the fact that this was a widespread storm."

The judgment of the circuit court of Champaign County is reversed.

*Judgment reversed.*