70

(No. 41202.— )

INLAND STEEL COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Juan Lopez Garcia, Appellee.)

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

KLINGBIEL and HOUSE, JJ., dissenting.

APPEAL from the Circuit Court of Cook County; the Hon. EDWARD F. HEALY, Judge, presiding.

MAYER, FRIEDLICH, SPIESS, TIERNEY, BROWN & PLATT, of Chicago, (HERBERT A. FRIEDLICH, WILLIAM J. WELSH and JOHN D. DONLEVY, of counsel,) for appellant.

COHN & COHN, and SAMUEL L. BULLAS, both of Chicago, (BERNARD HAMMER and IRWIN ROSEN, of counsel,) for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

On August 27, 1965, Juan Lopez Garcia, an employee of Inland Steel Company, sustained injuries to his back while working in the shipping department of the Chicago Heights works of the appellant. The arbitrator awarded compensation of 9²⁄₇ weeks temporary total disability and an additional amount of 80 weeks for a 30% complete and permanent loss of the left leg and a 10% complete and permanent loss of the right leg. This award was sustained

by the Industrial Commission and affirmed on *certiorari* by the circuit court of Cook County. The appellant, Inland Steel Company, now appeals to this court contending (1) that the injuries sustained by the appellee, Garcia, did not arise out of his employment and (2) that, even assuming the injuries did arise out of the employment, the findings of permanent disability are against the manifest weight of the evidence.

On the evening of August 27, 1965, the Chicago Heights area was struck by a rain and wind storm of tornadic force. The storm caused extensive damage to the buildings of the appellant, Inland Steel Company, and to many in the general area. The building, housing the appellant's shipping department, where the appellee, Garcia, was working when the storm struck, was more severely damaged than the appellant's other buildings. A large area of the roof of this building was torn off in the storm.

The upper roof of this building was constructed of a heavy concrete tile, each section of which was approximately one inch thick, 24 inches wide and from 54 to 72 inches in length. Tile sections weighed variously between 100 and 135 pounds. Each section was held in place by a 2½-inch-long lip which hung over successive supporting longitudinal member 8-inch channels that ran the full length of the building. The monitor, or upper roof, where the major damage was sustained was about 40 to 45 feet above the floor of the building. The claimant testified that "one big piece" from the roof struck him in the back causing him to fall into the recessed rail tracks 12 feet away from where he was standing and causing the injuries concerned.

The appellant argues that the injuries received were the result of a natural disaster affecting the entire neighborhood; hence the risk was one to which the general public was equally exposed and it cannot be said to have arisen out of the appellee's employment.

In *Eisner Food Stores* v. *Industrial Com.*, 33 Ill.2d 474,

this court held that the accident involved arose out of the employment of the deceased, who had been crushed to death by masonry and timbers from a sign wall and the ceiling of the lobby. We observed at page 475 : "This court has both sustained and denied recovery for injuries suffered when an employer's building has collapsed during tornados and severe wind storms. (Compare *Central Illinois Public Service Co. v. Industrial Com.*, 291 Ill. 256, with *Abell Chevrolet Co. v. Industrial Com.*, 370 Ill. 460, and *Abell Chevrolet Co. v. Industrial Com.*, 371 Ill. 76.) In the *Central Illinois Public Service Co.* case, in which recovery was allowed, the court said: 'While the risk arising from the action of the elements, such as a cyclone, is such a risk as all people of the same locality are subjected to, independent of employment, yet the circumstances of a particular employment may make the danger of receiving a particular injury through such storm an exceptional risk and one to which the public generally is not subjected. Such injury may be then said to arise out of the employment.' (291 Ill. 256, 265.)" We said further: "In our opinion the *Central Illinois Public Service Co.* case is controlling here. The sign wall was a structure peculiar to the building occupied and leased by Eisner. Its design and location made it unusually susceptible to wind damage." 33 Ill.2d 474, 476.

We deem that the arbitrator and the Commission were warranted in finding that the claimant here was exposed to a danger beyond that of the general public during the storm.

There was evidence that in the case of the appellant's newer buildings, which were damaged, roofing materials which were torn away by the storm tended to be thrown out and away from the buildings, rather than falling into the buildings, as occurred here. The newer buildings had corrugated sheet roofing rather than tile. Considering this and the size and weight of the sections of tile, each of which weighed between 100 and 135 pounds, and the height

from which displaced tiles, or fragments of them, would fall, it could be reasonably found that the danger to the claimant went beyond the danger to the general public. In *Eisner Food Stores* v. *Industrial Com.*, 33 Ill.2d 474, we said that part of that building's design and location made it unusually susceptible to wind damage. Here it could be reasonably said that the construction of the building and its roof increased the dangers during a storm to the claimant working in the building. Too, it was not unreasonable for the arbitrator and the Commission, on the basis of this record, to find that the appellee's injuries were sustained by material falling from the roof.

What this court said in *Brewster Motor Co.* v. *Industrial Com.*, 36 Ill.2d 443 at 448, is appropriate here. "The question whether or not an injury arose out of and in the course of employment is usually one of fact for the Industrial Commission to decide, and its findings in such respect will not ordinarily be disturbed on judicial review, particularly where the evidence on the issue is conflicting or susceptible of different reasonable inferences. [Citations] * * * The commission's finding that [decedent's] injuries and death arose out of his employment represents the resolution of a mixed question of law and fact, and the resolution of this type of question should not be disturbed on review unless it is against the manifest weight of the evidence. [Citations]."

The finding of the Commission will stand.

The appellant also argues that the Commission's findings regarding the appellee's permanent disability was clearly contrary to the weight of the evidence. As we have often stated, the resolution of factual matters regarding the extent of the employee's injury is for the Commission to determine. (*Granite City Steel Co.* v. *Industrial Com.*, 39 Ill.2d 187; *Electro-Motive Div., General Motors Corp.* v. *Industrial Com.*, 411 Ill. 224.) After reviewing the record here, we are of the opinion that while the medical evi-

dence was in dispute, there was sufficient evidence to sustain the award. (See *Electro-Motive Div. Corp., General Motors Corp.* v. *Industrial Com.,* 411 Ill. 224; *Crouch-Walker Co.* v. *Industrial Com.,* 34 Ill.2d 338.) It cannot be convincingly argued that the Commission's findings were against the manifest weight of the evidence.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE KLINGBIEL, dissenting:

I cannot agree with the conclusion reached in this case. In my view the risk was clearly one to which the general public was equally exposed, and did not in any manner arise out of the appellee's employment.

The rule is well established that before an injury from an act of God may be said to have arisen from the employment it must be shown there was a special or greater risk to the employee arising from the employment relationship than to other members of the general public in the vicinity. (*J. I. Case Co.* v. *Industrial Com.,* 36 Ill.2d 386; *Abell Chevrolet Co.* v. *Industrial Com.,* 370 Ill. 460.) The court here finds a special or greater risk of windstorm injury in the construction of the roof. It is said that the danger is increased because tile roofing would fall down instead of fly away, as would be the case (supposedly) with corrugated metal roofing.

This, it seems to me, makes the presence of special risk depend entirely upon fortuitous circumstances. If an employee out in the yard happened to be struck by a piece of flying corrugated roofing, the court's test (this time looking at the dangerous tendency of these sheets to catch the wind) could readily justify a finding of extra danger in that kind of construction as well. In short, hindsight can hardly fail to discover that but for the use of certain construction material the accident would not have happened. And from

there it is but an easy step to conclude that its presence in fact enhanced the danger of that particular injury.

Such reasoning is not acceptable to me. In the absence of evidence to indicate some defect in the building or some characteristic making it especially susceptible to windstorm damage, it cannot be said that it increased the hazard. This, until now, has consistently been the holding of this court. *Abell Chevrolet Co.* v. *Industrial Com.,* 370 Ill. 460, presented a case virtually on all fours with this case. As here, an employee working inside a building constructed of brick and tile was injured by falling debris when the building was struck and partially demolished in a cyclone. An award by the Commission was confirmed by the circuit court. On review this court reversed, pointing out that there was no special or greater risk to the employee. The contention was rejected that the type of construction subjected him to an exceptional risk greater than that to which other persons were exposed. There followed shortly a further case, *Abell Chevrolet Co.* v. *Industrial Com.,* 371 Ill. 76, which involved the same cyclone. Another employee working in the building was struck and killed by a falling steel beam, and a circuit court judgment confirming an award to him was likewise set aside. The windstorm posed no special or greater risk to him, arising from the employment, than to other members of the general public in the vicinity.

No distinction whatever can be drawn between the *Abell* cases, and the case at bar, nor does the opinion attempt to make one. It can hardly be said that the steel beam and the bricks and tile which struck the employees in these cases were more likely "to be thrown out and away from the buildings" than the falling material in this case, even if such an observation could have legitimate relevance. Nor is it of any significance that the shipping department was more severely damaged than other buildings of the appellant. The force of a storm is not everywhere of uniform intensity,

and a building in the hardest hit area would naturally show the greatest damage.

Support for the court's conclusion is sought in *Eisner Food Stores* v. *Industrial Com.*, 33 Ill.2d 474, where a sign wall rising 10 or 15 feet above the roof of a store collapsed in a windstorm. The sign wall toppled over and came through the roof, causing the death of the store manager. In upholding an award this court pointed out that the sign wall was a structure peculiar to this particular building, that its design and location made it "unusually susceptible to wind damage," and that "no other portion of the building was damaged, nor does the record suggest that other buildings in the shopping center were damaged." Based upon such factors the conclusion was reached that the presence of the sign wall could be found to be an exceptional risk and one to which the public generally is not subjected.

But the peculiar sign structure in the *Eisner* case is a far cry from the ordinary roof involved in this case, which no one has suggested was "unusually susceptible to wind damage." Moreover much of the building was severely damaged in this windstorm, as were many others in the vicinity. Both the testimony and the photographic evidence show widespread damage throughout the surrounding area, and the fact is not disputed that stores, factories, dwellings and countless other structures in the community were damaged. The relevant facts in the *Eisner* case bear little resemblance to those before the court here.

The claimant was in no different a position than scores of other people in the community who were struck by flying or falling debris. While the degree of damage of course varied among different buildings, the peril itself was community-wide. No building in the path of the storm was safe, and the claimant was subjected to no greater risk of injury than other persons who happened to be in the way of it. There was no peculiar exposure of the appellee. He was

subjected to no enhanced danger from the storm. No circumstances of his employment increased the risk of injury from windstorm over that to which the general public was subjected, and the finding that the injury arose out of the claimant's employment is against the manifest weight of the evidence. The judgment ought to be reversed and the cause remanded, with directions to set aside the award.

Mr. JUSTICE HOUSE joins in this dissent.