MERRITT INGRAM, APPELLANT. V. WILLIAM BRADLEY, DOING BUSINESS AS STARLITE DRIVE INN THEATRE, ET AL., APPELLEES.

MARTHA INGRAM, APPELLANT, V. WILLIAM BRADLEY, DOING BUSINESS AS STARLITE DRIVE INN THEATRE, ET AL., APPELLEES.

163 N. W. 2d 875

Filed January 10, 1969. No. 36974.

Kryger & Kryger and Brogan & Monen, for appellants.

Deutsch & Hagen, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and STUART, District Judge.

McCOWN, J.

Plaintiffs' claims for workmen's compensation benefits were denied by the single judge Workmen's Compensation Court and by the district court. The apparent basis for the denial was that the injuries were caused by a severe wind and rain storm and, therefore, did not arise out of the employment.

Merritt and Martha Ingram, husband and wife, were both employed at the defendant's outdoor theatre, southeast of Neligh, Nebraska. On June 3, 1966, they arrived at the theatre a few minutes after 7 p.m. Mr. Ingram, as usual, turned on the lights, opened the entrance gate, and closed the exit gate. Mrs. Ingram reported first to the snack bar building where she picked up the money to take to the ticket booth. There was approximately $400 to $500, and the money was Mrs. Ingram's responsibility. Both of the Ingrams then went to their station at the ticket booth of the theatre. Their usual procedure was for Mr. Ingram to work outside the booth, handing tickets and money back and forth between Mrs. Ingram at the ticket window and the patrons in the automobiles. It was required that at least one of them be in the booth at all times.

The ticket booth itself was a small 6 x 8 foot frame building. It was moveable, mounted on 4 x 4 foot skids, and had no foundation. It had been built of new and used lumber in 1953 or 1954. It had glass in the upper portion of three sides and the door was on the fourth

side. Two of the glass windows were cracked and the window on the west had been broken into four pieces since the previous fall. The management had been notified of the condition, but nothing had been done. Mr. Ingram had put scotch tape on this window to hold it. The booth was equipped with 2 or 3 chairs, a cash register, and a couple of fans. There was no telephone or other means of communication between the booth and the main building called the "snack bar."

The "snack bar" was a concrete block building which housed food service facilities, projection booth, and rest rooms. This building is located about 155 feet northwest of the screen. The screen was some 88 or 89 feet west of the ticket booth. Four other employees and the manager were on duty at the snack bar building at the time.

When the Ingrams arrived at work, they saw a cloud moving in from the northwest. They noticed nothing unusual about it. After the preparations for the evening's business were completed, Mr. Ingram was sitting outside the ticket both. It started to rain, and he stepped inside the booth with Mrs. Ingram. No patrons had yet arrived. Shortly thereafter, the Ingrams discussed whether or not it would be safer to go to their car, which was parked some 40 feet away. Moments later, the ticket booth was blown over. The Ingrams ended up in the debris of the ticket booth on the edge of the road to the southeast of where the booth had been. The wooden theatre screen was blown down at approximately the same time.

Mrs. Ingram suffered severe facial lacerations from glass which required over 92 stitches. Her nose was nearly severed and she sustained a compound nasal fracture. There was considerable tissue loss, retraction and scarring about the eye, tearing of one eye, and impairment of vision. She also sustained a comminuted fracture of the left leg, as well as contusions and abrasions. Her injuries required extensive hospitalization and the uncontradicted medical testimony was that she

sustained a 25 percent permanent disability of the body as a whole as a result of the accident.

Mr. Ingram suffered a laceration of the right wrist with scarring, was hospitalized 2 days, but did not sustain any permanent disability.

Except for the screen and the ticket booth, there was no other damage to the theatre area or to the snack bar building, except for one window in a combination door. No one else in the theatre area, the City of Neligh, nor the vicinity was injured by the storm. The telephones and electricity were off for a short time in Neligh; a considerable number of tree limbs were blown down generally over the town; and some television antennas were down. No storm warnings were given by the weather bureau. The sheriff of Antelope County and the police chief of Neligh saw no occasion to give any severe weather warnings to the weather bureau or other agencies, and although they thought the storm was severe, they saw nothing unusual about it as a summer storm. They had seen at least one storm that severe in the past 3 or 4 years.

Plaintiffs' claims were consolidated for all purposes for trial. Thereafter, the district court found against the plaintiffs and affirmed the judgment of the Nebraska Workmen's Compensation Court dismissing plaintiffs' petitions.

The basic issue here is whether the plaintiffs' injuries arose out of their employment. The defendants rely heavily on the case of Gale v. Krug Park Amusement Co., 114 Neb. 432, 208 N. W. 739, 46 A. L. R. 1213, and on Crow v. The Americana Crop Hail Pool, Inc., 176 Neb. 260, 125 N. W. 2d 691, which reaffirmed the holding of the Krug Park case. Those cases established that "injuries resulting from exposure to the elements, such as abnormal heat, cold, snow, lightning, or storms, are generally classed as risks to which the general public is exposed, and as not coming within the purview of workmen's compensation acts, unless the record dis-

closes a hazard imposed upon the employee by reason of the employment greater than that to which the public generally is subjected."

There are obvious factual distinctions between the case at bar and either of the two cases referred to. There may even be some question as to whether the storm here was sufficiently severe and unusual as to be abnormal. Even as to a storm classed as an act of God, the general rule is: "* * * if an employee, by reason of his employment, is exposed to a risk of being injured by storm 'which is greater than the risk to which the public in that vicinity is subject, or if his employment necessarily accentuated the natural hazard from the storm, which increased hazard contributed to the injury,' it is an 'injury arising out of the employment, although unexpected and unusual.'" 6 Schneider, Workmens Compensation Text (Perm. Ed.), § 1552, p. 78.

As stated in 1 Larson, Workmen's Compensation Law, § 8.00, p. 51: "All courts agree that injury due to lightning, windstorms, earthquake, freezing, sunstroke, and exposure to contagious diseases arises out of the employment if the employment increases the risk of this kind of harm."

A definite exception to the doctrine which permits recovery only when a hazard is imposed upon the employee, by reason of the employment greater than that of the general public, has been developed. That exception has been adopted by a large number of courts. "Although the original force, such as hurricane, lightning, or earthquake, did not arise out of the employment under the increased-risk test, the injury may be compensable to the extent that it results from physical contact, produced by that force, with some part of the working environment. In less abstract terms, while claimant cannot recover for the effects of the direct impact of the tornado on him, he can recover if the tornado blows down a wall which in turn falls on him." 1 Larson, Workmen's Compensation Law, § 8.30, p. 60. A

recent expression of the contact with the premises rule is stated in Whetro v. Awkerman (Mich.), 160 N. W. 2d 607. Such cases generally stem from Caswell's Case (1940), 305 Mass. 500, 26 N. E. 2d 328.

Although phrased in terms of the increased risk test, many courts have long recognized the rule that where an employee, by reason of his duties, is exposed to a special or peculiar danger from the elements by reason of his employment, and sustains an unexpected injury by reason of the elements, the injury constitutes an accident arising out of and in the course of his employment. See, Annotation, 83 A. L. R. 234, and cases there cited.

"The test has been said to be 'not whether the injury was caused by an act of God,' but 'whether the one injured was by his employment specially endangered by the act of God.'" 6 Schneider, Workmens Compensation Text (Perm. Ed.), § 1552, p. 78.

Even under the increased risk test of the Krug case, the plaintiffs here were exposed to a greater hazard than the general public, because the general public was not in a 6 x 8 foot frame ticket booth, with cracked windows, and skids for foundations during a severe windstorm. It is noteworthy that none of the other employees in a more substantial building on the same premises, nor any member of the general public in the area, was injured by the storm. It is also clear that the plaintiffs' injuries were caused by direct contact with the glass and boards of the structure in which they were required to be and not simply by the direct impact of the windstorm on their bodies.

The physical condition of the structure where the plaintiffs' employment required them to be directly increased the natural risk of injury from the storm, and that increased risk contributed to the injuries. Their employment brought the plaintiffs to that place. Under such circumstances, their injuries arose out of their employment.

We hold that where the conditions of the plaintiffs' employment environment accentuate the natural hazard from a severe windstorm, which increased hazard contributed to the injury, it is an injury arising out of the employment, and is compensable under the Workmen's Compensation Act.

The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.