(No. 49284.—

DECATUR-MACON COUNTY FAIR ASSOCIATION *et al.*, Appellees, v. THE INDUSTRIAL COMMISSION *et al.*—(Fleta Morris, Appellant.)

*Opinion filed October 5, 1977.*

Walden, Cole & Ohlsen, of Decatur (James R. Coryell, of counsel), for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (Frederick P. Velde, of counsel), for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Fleta Morris, widow of Redvers Morris, filed on March 24, 1975, an application for adjustment of a claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) arising from the April 3, 1974, death of her husband. An arbitrator heard the case on May 1 and on that date awarded compensation plus a penalty of "50% of the amount payable at the time of this award"

for "unreasonable and vexatious delay in the refusal to pay benefits." The order entered by the arbitrator further found the compensation proceedings "do not present a real controversy, but are merely frivolous or for delay." The award was affirmed by the Industrial Commission except that the amount payable to the second injury fund was increased from $400 to $1,000 and the penalty eliminated. On review the Macon County circuit court held the arbitrator's award "blatantly biased and prejudiced," found the facts insufficient to support compensation and vacated the Industrial Commission's award without remandment. Claimant has appealed directly to this court pursuant to our Rule 302(a)(2). 58 Ill. 2d R. 302(a)(2).

The proceedings before arbitrator Herbert Ross are well-nigh incredible. The May 1 hearing opened with a request by him for permission of counsel to amend the application by adding Country Mutual Companies, the insurer of the named respondent Decatur-Macon County Fair Association, as a respondent. The objection of counsel for respondent that there was no reason for the addition was overruled and the amendment made. Arbitrator Ross then made the following statement prior to the introduction of any evidence:

> "This record should show that this Arbitrator has become actively interested in the issues involved in this pending case. It is on the insistence of this Arbitrator that this case is now on trial today's date.
>
> This occurrence took place April 3rd, 1974. The circumstances, as will be reflected by the evidence, would indicate to this Arbitrator that this case is clearly compensable within the terms and meanings and provisions of the Illinois Workmen's Compensation Act.
>
> The decedent was killed as a result of this accident. He left him surviving a widow, 65 years of age, seriously and permanently disabled with no visible means of support and one year and one month later, on April 30th, 1975, this Arbitrator is pursuing this insurance carrier, Country Mutual Companies, to voluntarily comply with

the Illinois Workmen's Compensation Act and supply the dependency benefits to the surviving widow in that she has had no means of support. And after 13 months of delay, and with the thinnest, most improbable pretense of defense—and at the end of this trial I am going to supply both the insurance department of the State of Illinois and to the Chairman of the Illinois Industrial Commission the recommendation of this Arbitrator that every step and every means available to them be exercised to prevent such horrible discretion, horrible discrimination against a county employee who is working for this county, paying insurance premiums for Workmen's Compensation coverage, and having to resort to long and prolonged litigation with many delays to collect the benefits to which she is now entitled and has been so entitled for the past several months that has been so stated heretofore.

\* \* \*

I have been hearing from everyone connected with this county organization of this great tragedy of the unreasonable and vexatious delay of this insurance company to pay benefits that were due. I believe, if need be, we could have 100 people come in voluntarily and testify for these petitioners that are connected with this Respondent company because they are incensed by this delay, this vexatious delay, and as I previously indicated, in addition to other benefits that I am going to award, I am going to further assess a 50 percent penalty against your company under the 19—K provision for this delay. \*\*\*"

Following the arbitrator's announcement that "I have taken that judicial notice of the vexatious delay on behalf of both you and your client," the following occurred:

"MR. VELDE [respondents' counsel] : Well, I think that we have a right to know what the vexatious delay is that you are taking judicial notice of.

THE ARBITRATOR: Counsel, if you are not aware by now of the abuse and vexatious delay that has been inflicted on this nice lady, then you have had ear plugs in your ears for the past year, and certainly have heard nothing that has been said to you in the past two days.

MR. VELDE: Your Honor, I think that the vexatious delay will have to come if this case is a compensable

case, which we are putting on evidence now to determine. The hearing today is to determine that, and this is the first time that evidence has been presented.

THE ARBITRATOR: You have not one scintilla of proof as a reasonable basis for failing to pay compensation as due.

All of your defense has been paper-thin, intended to build up fees, intended to avoid your obligation under the Illinois Workmen's Compensation Act. And as already indicated to you, I am making charges both with the insurance department and with the Illinois Industrial Commission on the question of whether or not a company that refuses voluntary compliance on cases of this type should be licensed to insure liability of people in organizations and corporations in this state.

This is a highly lucrative area of insurance business that you are privileged to handle, that you make a great profit on. You have been paid money by this county. You owe an obligation under this social legislation to make these payments, and I really had to chase you today to get you in here to trial, so now proceed on. Let's get on with it.

MR. VELDE: I think that when you say that the defenses are paper-thin, we haven't even presented our side of the case.

As to building up fees, I think you are taking that out on me personally to put that in the record. There is no basis for that."

While the record contains other statements of a similar nature by the arbitrator during the balance of the hearing, their inclusion would serve no useful purpose. It is apparent from the material already quoted that he commenced the hearing determined to award compensation and impose a penalty, and that the trial court's finding that the arbitrator was "blatantly biased and prejudiced" was warranted. But that does not necessarily mean decedent's death was not the result of a compensable injury. Resolution of that question requires a detailed review of the evidence.

Prior to his employment by the fair association

decedent and claimant had lived in a "big house" located some distance from the fairgrounds. They decided in 1966 to buy a trailer and move it onto their property where they could live in it and rent the house. Decedent's predecessor as caretaker at the fairgrounds owned and lived in a trailer at the fairgrounds, and advertised it for sale. Claimant and her husband discussed the purchase of this trailer with the owner, who suggested they buy the trailer and take over his work. They did so after talking to association officials, moving into the trailer in the same location it had previously occupied directly back of the grandstand near the center of the 48-acre fairground complex. Decedent received as compensation from the association $20 per month and free ground rent, water, and electricity, and the garbage was picked up whenever the fairground was serviced. It was required by the association that decedent live on the fairgrounds, and his duties involved the prevention of vandalism, the collection of rent on horse stalls and for winter storage of boats in the buildings on the grounds, providing information regarding weekend events held on the premises and conferring with the executive secretary of the association regarding these or related matters. Some of the association records were kept by decedent in the trailer, and claimant assisted in keeping those records. There were no other living facilities on the grounds, and the trailer served both as an "office" and home for the Morrises. The executive secretary of the association testified decedent was expected to be on the grounds 24 hours a day.

The fairground buildings, other than a concrete block restroom about 15 feet from the trailer, were frame construction with steel siding and concrete floors. The evidence established that on the afternoon of April 3, 1974, while decedent, claimant and a daughter-in-law were seated in the living room of the trailer "talking," a tornado struck, first destroying the trailer and restroom. Six other

buildings in the complex were demolished and five damaged. Decedent was killed and his wife severely injured. The record contains no indication of the extent of damage beyond the fairground area since claimant's objections to questions on that subject were sustained.

While the courts of this country have not reached entirely uniform conclusions in considering whether injuries resulting from tornadic winds arose "out of and in the course of employment" as that phrase is used in workmen's compensation acts (see Annot., *Workmen's Compensation: Injury or Death Due to Storms,* 42 A.L.R.3d 385 (1972); see also 1 A. Larson, Workmen's Compensation sec. 8.00 *et seq.* (1972)), most jurisdictions have recognized that, before compensation can be awarded, there must be some peculiar or increased risk in the employee's duties which exposes him to special or greater danger from the elements (42 A.L.R.3d 385, 391). This court has consistently adhered to that interpretation. *Inland Steel Co. v. Industrial Com.* (1968), 41 Ill. 2d 70; *Eisner Food Stores v. Industrial Com.* (1965), 33 Ill. 2d 474; *Abell Chevrolet Co. v. Industrial Com.* (1939), 371 Ill. 76; *Abell Chevrolet Co. v. Industrial Com.* (1939), 370 Ill. 460; *Central Illinois Public Service Co. v. Industrial Com.* (1920), 291 Ill. 256.

Claimant stresses that petitioner's duties required him to be on the premises 24 hours per day, that when the tornado struck he was seated in the trailer living room where he could view the grandstand, an area in which vandalism frequently occurred, that his employer required him to live in the "flimsy trailer" in an area occupied by buildings of insubstantial construction and that this combination of circumstances indicates his death arose out of and in the course of his employment. We cannot agree.

The fact that most of the fairground buildings were of insubstantial construction is irrelevant in this case. The trailer was not damaged by the debris from other

buildings, for it was the trailer that was first struck and demolished. The trailer was not furnished by the association, nor was decedent "required" by the association to live in it although, admittedly, he may have found it a convenient arrangement since it was necessary that he live on the premises. But, in any event, a not insignificant segment of the general public lives in trailers, and it had been the intention of the Morrises to do so before they became aware of the possibility of employment at the fairgrounds. Too, we note that the tornado completely demolished the presumably more substantial concrete block building housing the restrooms near the trailer. It is not contended, nor is there in this record any indication, that the area in which the fairground is situated is one abnormally attractive to tornados. In short, the facts of this case do not permit a conclusion that the conditions or duties of decedent's employment increased the risks of this type of injury beyond that to which the general public was exposed unless this court were to adopt the "positional risk" rationale used by some courts (see Larson, sec. 8.22 (1972)). Under that rationale as applied by Louisiana the fact that an employee's duties required him to be at the place where the tornado struck is sufficient to make the resulting injury compensable. We believe our interpretation of the "arising out of and in the course of" employment requirement is more consistent with the intent of the Act to compensate only for those injuries the risk of which is increased by the employment beyond that to which other members of the public are exposed.

Absent proof of some increased risk of injury, peculiar to this employment, the award of compensation by the Commission must be held contrary to the manifest weight of the evidence. The judgment of the circuit court of Macon County is affirmed.

*Judgment affirmed.*

MR. JUSTICE DOOLEY, dissenting:

As the majority aptly states, the finding of the circuit court that the arbitrator was biased "does not necessarily mean decedent's death was not the result of a compensable injury" (69 Ill. 2d at 265). It is, of course, the decision of the Commission, as distinguished from that of the arbitrator, with which both the circuit court and this court are concerned. *Sweitzer v. Industrial Com.* (1946), 394 Ill. 141, 148; *Rodriguez v. Industrial Com.* (1939), 371 Ill. 590, 593.

In my opinion, not only is there substantial evidence to support the finding of the Industrial Commission, but also the majority departs both from the prior opinions of this court and from the majority of other jurisdictions on this issue of the employee's right to compensation when some natural force plays a part in the injury.

Here decedent was required to live on the fairgrounds. His duties had to do with clerical work such as collecting rents and keeping records, as well as protecting the grounds from vandals. His wife's work embraced similar functions, as well as answering telephone inquiries about events at the fairgrounds. As the majority correctly points out, the trailer decedent and his wife lived in served both as an office and home. It was the only living facility on the fairgrounds.

The trailer had been purchased from claimant's predecessor after conference with the association officials. Part of claimant's compensation was free ground rent, water and electricity for the trailer. Its location in the center of a 48-acre fairground complex could well make it peculiarly susceptible to the ravages of a tornado. These were matters for the Industrial Commission in performing its well-established fact-trying function.

As this court observed in *Brewster Motor Co. v. Industrial Com.* (1967), 36 Ill. 2d 443, 448-49:

"The question whether or not an injury arose

out of and in the course of employment is usually one of fact for the Industrial Commission to decide, and its findings in such respect will not ordinarily be disturbed on judicial review, particularly where the evidence on the issue is conflicting or susceptible of different reasonable inferences. [Citations.]

\* \* \*

The commission's finding that [decedent's] injuries and death arose out of his employment represents the resolution of a mixed question of law and fact, and the resolution of this type of question should not be disturbed on review unless it is against the manifest weight of the evidence. [Citations.] "

Many of the cases referred to in the majority opinion support our position. *Inland Steel Co. v. Industrial Com.* (1968), 41 Ill. 2d 70 (employee sustained an injury when a piece of roofing struck him after the storm which damaged not only his employer's building but others in the area), *Eisner Food Stores v. Industrial Com.* (1965), 33 Ill. 2d 474 (a storm which meteorological records showed had the highest wind speed in 25 years caused a sign wall to fall through a roof killing the employee), and *Central Illinois Public Service Co. v. Industrial Com.* (1920), 291 Ill. 256 (a tornado blew down a portion of the employer's building and ammonia fumes, together with escaping steam from pipes, brought about the employee's death), were all instances where the decision of the Commission for the employee was affirmed by this court.

The general rule seems to be that so long as the employment in any way combines with the elements of nature, the injury is compensable. In *Industrial Com. v. Hampton* (1931), 123 Ohio St. 500, 176 N.E. 74, decedent, a yardman, was killed while in a warehouse seeking shelter from a storm that destroyed it; in *Many v.*

*Bradford* (1935), 266 N.Y. 558, 195 N.E. 199, an employee at a recreation resort, required to be on duty at all times, was struck by lightning while stooping to fasten a tent flap; in *State ex rel. Peoples Coal & Ice Co. v. District Court* (1915), 129 Minn. 502, 153 N.W. 119, the driver of a wagon left his team of horses in a rainstorm, and the tree he sought shelter under was struck by lightning resulting in his death; in *Reid v. Automatic Electric Washer Co.* (1920), 189 Iowa 964, 179 N.W. 323, a factory worker, while closing windows in the factory, was killed by debris from other parts of the building; and in *Ingram v. Bradley* (1969), 183 Neb. 692, 163 N.W.2d 875, a husband and wife, employed at an outdoor theatre, ran inside a ticket booth to avoid a storm, and were injured when the wind blew over the booth. Each instance was held compensable.

Here, whether there was any such combination between the employment and natural forces causing the death and injury in question was preeminently an issue of fact for the Industrial Commission. To this effect see *Madura v. City of New York* (1924), 238 N.Y. 214, 144 N.E. 505; *DeLuca v. Board of Park Commissioners* (1919), 94 Conn. 7, 107 A. 611; *Larke v. John Hancock Mutual Life Insurance Co.* (1916), 90 Conn. 303, 97 A. 320; *Young v. Western Furniture & Manufacturing Co.* (1917), 101 Neb. 696, 164 N.W. 712.

So also where the work requires that the employee be on the employer's premises, the employee is to be considered performing services arising out of and in the course of such employment during the time he is on the premises. Many cases turn on this fact; *e.g., Whetro v. Awkerman* (1970), 383 Mich. 235, 174 N.W.2d 783; *Brooks v. Dee Realty Co.* (1962), 72 N.J. Super. 499, 178 A.2d 644 (dismissal of common law action on the basis of the Workmen's Compensation Act); *Baran's Case* (1957), 336 Mass. 342, 145 N.E.2d 726; *Wilson Cypress Co. v. Miller* (1946), 157 Fla. 459, 26 So. 2d 441.

Parallel with this proposition is the rule in this jurisdiction that when an employee sustains an injury on the employer's premises after working hours, it is compensable. The best illustrations are parking lot incidents where a fellow employee may injure another with an automobile. Nonetheless, a common law action cannot be maintained since his exclusive remedy is under the Workmen's Compensation Act notwithstanding that his duties of the day have terminated. In *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 279, involving an injury arising out of such facts, this court, in holding that the Workmen's Compensation Act barred the common law action, observed:

> "[T]he courts of this jurisdiction have consistently concluded that an injury accidentally received on the premises of the employer by an employee going to or from his actual employment by a customary or permitted route, within a reasonable time before or after work, is received in the course of and arises out of the employment. (*Indian Hill Club v. Industrial Com.*, 309 Ill. 271; *Union Starch and Refining Co. v. Industrial Com.*, 344 Ill. 77; *Wabash Ry. Co. v. Industrial Com.*, 294 Ill. 119; *Western Coal and Mining Co. v. Industrial Com.*, 296 Ill. 408; *Biggs v. Farnsworth*, 336 Ill. App. 417; *Cunningham v. Metzger*, 258 Ill. App. 150.) More recently, in both *DeHoyos v. Industrial Com.*, 26 Ill. 2d 110, and *Carr v. Industrial Com.*, 26 Ill. 2d 347, we have aligned ourselves with those jurisdictions holding that the same result obtains with respect to accidental injuries received on parking lots maintained by employers for the use of their employees. *E.g. Murphy v. Miettinen*, 317 Mass. 633, 59 N.E.2d 252; *Rogers' Case*, 318 Mass. 308, 61 N.E.2d 341; *DeWar v. General Motors Corp.*, 19 N.J. Misc. Rep. 297, 19 A.2d 194; *E. I.*

*Dupont De Nemours & Co. v. Redding,* 194 Okla. 52, 147 P.2d 166; *Krovosucky v. Indus. Com.,* 74 Ohio App. 86, 57 N.E.2d 607."

In my opinion the majority does not express the well-established law on the issue before us. For the reasons stated, I would affirm the decision of the Industrial Commission.

MR. JUSTICE GOLDENHERSH joins in this dissent.