A. E. STALEY MANUFACTURING COMPANY, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Larry Bagley, Appellees).

Fourth District (Industrial Commission Division)   No. 4—85—0246WC

Opinion filed February 4, 1986.

WEBBER, P.J., dissenting.

Robert E. Maciorowski, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

D. Douglas McCarthy, of Baird, McCarthy & Rowden, of Decatur, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, Larry Bagley, filed a claim under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) for injury he sustained while employed by A. E. Staley Manufacturing Company. An arbitrator awarded claimant $202.53 per week for four-sevenths of a week for temporary total disability; $202.53 per week for 15 weeks for permanent partial disability for 10% loss of vision in his left eye; and $300.95 for necessary medical expenses. The employer sought review, and the Industrial Commission affirmed the arbitrator's decision. The employer appeals from a judgment of the circuit court of Macon County confirming the Commission's decision.

On December 13, 1979, claimant drove to work and parked in the employee lot which is part of the Staley industrial complex in Decatur. Claimant walked past the lot, through the main gates, across two sets of railroad tracks embedded in white rock, and into the parking lot next to "No. 20 building," where employees punched the time clock each morning. The lot is approximately 100 to 150 feet past the main gate.

The Building 20 parking lot surface is three-fourths gravel and one-fourth concrete. The lot is used by semitrailer trucks to remove industrial trash, raw materials, powdered starch and metal shavings from the buildings. These materials spill out and are scattered across the lot, along with cinders, rock particles, dust and dirt. George Witt, claimant's co-worker, also testified that the lot is located partially under a viaduct which creates a constant artificial wind condition.

Claimant walked across the lot with his brother, Carl Bagley. George Witt also was present. Claimant suddenly grabbed his eye and told the others that he had something in his eye. Claimant went to his

employer's first aid department where a nurse washed out his eye. An hour later, when the pain continued, the nurse sent him to Dr. Frank Snell, a local opthalmologist. Dr. Snell found that claimant had a scratch on the corneal epithelium of his left eye.

Claimant was later treated by Dr. James Kammer, an opthalmologist, who in turn referred him to Dr. James M. Gordon, an opthalmologist in St. Louis, Missouri. Both Drs. Kammer and Gordon diagnosed claimant's condition as recurrent corneal erosion syndrome, and stated that the condition resulted from the injury in question. The syndrome manifests itself in claimant by intermittent episodes of pain, burning, tearing and foreign body sensation requiring long term use of medication and medical care.

■ Our review is limited to determining whether the Commission's findings, drawing inferences from the undisputed facts, are against the manifest weight of the evidence. (*Eagle Discount Supermarket v. Industrial Com.* (1980), 82 Ill. 2d 331, 412 N.E.2d 492.) The sole issue before us, then, is whether the Commission's conclusion that claimant's injury arose out of and in the course of employment was against the manifest weight of the evidence. An injury must be sustained both "arising out of" and "in the course of" employment. Ill. Rev. Stat. 1983, ch. 48, par. 138.2; *R. J. Reynolds Tobacco Co. v. Industrial Com.* (1985), 133 Ill. App. 3d 322, 478 N.E.2d 901.

■ The finding that the injury occurred in the course of employment is not in dispute here, but that fact is not sufficient to establish that it arose out of the employment. The injury must have its origin in some risk connected with or incident to the employment so as to create a causal connection between the employment and the injury. The injury does not arise out of the employment if it results from a hazard that the employee would have been exposed to separate from his employment. *Greene v. Industrial Com.* (1981), 87 Ill. 2d 1, 428 N.E.2d 476.

■ All company parking lot injuries are not compensable. The injury must be incidental to the normal use of the lot. (*Hiram Walker & Sons, Inc. v. Industrial Com.* (1968), 41 Ill. 2d 429, 244 N.E.2d 179. Cf. *Aaron v. Industrial Com.* (1974), 59 Ill. 2d 267, 319 N.E.2d 820.) There is nothing in the record here to show that claimant's use of the lot was other than normal. The lot is the normal access route employees use to get to Building 20.

In finding that the injury arose out of the employment, it would be enough to say that the public neither uses the lot nor is exposed to it. (*Chmelik v. Vana* (1964), 31 Ill. 2d 272, 201 N.E.2d 434.) It must be also noted, however, that the regular use of the lot by employees,

the company trucks carrying powdered starch, white rock, metal shavings, and other debris which spills onto the lot, and the artificial wind condition combine to create a greater degree of exposure for possible eye injuries for the employees than for the general public. Although all people walking outdoors are subject to the wind blowing foreign particles in their eyes, here the employee was exposed to these extra dangers. See *Brooks v. Carter* (1981), 102 Ill. App. 3d 635, 430 N.E.2d 566 (risk may be common to general public, but employees face same risk to a greater degree).

The employer contends that the record is devoid of testimony regarding the surface and wind conditions on the day in question, and is devoid of testimony regarding exactly what object entered claimant's eye.

The record, however, reveals that Witt was asked to describe the surface conditions "when [Bagley] reached for his eye." Witt stated that the lot was "gravel, white rock, whatever, cinders spilled out from hauling with the trucks *** and there is a lot of dust and rock, because the semis drag it on there ***. [I]t is white rock, dirt, cinders, what blows up from the trucks going by." Claimant's brother Carl, when asked what materials were on the ground "that day," stated, "At Staley's there is always a lot of stuff. I mean there is cinders, there is rock. They load out all their trash in trucks, and it blows off on the roads and, you know, there is just a lot of stuff, all different types and all the time about anything you want to find." Again, he was asked if those materials were present "at the point where your brother clutched his eye." He replied, "It is there ***. You have to see it to believe it, you know. There is really a lot of stuff out there." A third time, he was asked whether that debris was "on the surface of the parking lot at the time you saw your brother clutch his eye." He answered, "Yes, like I say, there is stuff on there all the time." This testimony provided the Commission with evidence from which it could determine the debris-covered condition of the lot on the day claimant was injured.

In regard to the wind conditions on the day in question, Witt testified that "[t]here is always something blowing around that plant because of the building. That is the truth." He also stated that there were "little wind tunnels" and that the wind was constant. Carl Bagley stated that the weather was "about like normal" that day, "but out there you know *** you always get a lot of wind in the face." This testimony provided the Commission with a sufficient basis for reasonably inferring that the constant wind was present on the day of the injury.

■ Although claimant cannot prove a particular foreign particle from the employer's lot flew into his eye, the exact particle causing this type of injury is often not susceptible to proof. The evidence regarding the artificial wind condition and the unique debris found in the middle of the industrial complex, away from areas frequented by the general public, together with the medical evidence of claimant's scratched cornea, was sufficient to create a reasonable inference that claimant was injured by a foreign particle which came from the employer's lot. For these reasons, we find that the Commission's decision that claimant's injury arose out of his employment was based on reasonable inferences and is not against the manifest weight of the evidence.

■ The employer urges that the holding of *Cummings v. Industrial Com.* (1945), 389 Ill. 356, 59 N.E.2d 872, is controlling in the present case, but it is distinguishable. In that case, the claimant stood at the doorway of his employer's building, and a foreign particle blew into his eye. The court held that the employee's injury did not occur in the course of employment. In *Cummings,* there was no evidence regarding unique debris on the employer's property, but here claimant was exposed to a debris-covered lot not located close to public property along with an artificial wind condition. The employer also cites *Illinois Country Club, Inc. v. Industrial Com.* (1944), 387 Ill. 484, 56 N.E.2d 786, but that case likewise is distinguishable. There, a caddy was struck by lightning on a golf course, and the court found that the injury did not arise out of the employment because all persons in the locality were equally exposed to the natural cause of the injury. In the present case, claimant was not injured by a natural cause alone. The Commission found that he was injured as the result of the artificial wind blowing foreign material scattered on the ground of the employer's lot. We believe that this is a reasonable inference based on the evidence.

For the reasons stated, the judgment of the circuit court of Macon County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

LINDBERG, BARRY and KASSERMAN, JJ., concur.

PRESIDING JUSTICE WEBBER, dissenting:
Although I am always acutely aware of the deference which must be given to factual findings of the Commission, especially in circum-

stantial cases, I cannot accede to its determination in this case and therefore respectfully dissent from the holding of the principal opinion.

About the only clear fact in this record is the fortuitous occurrence that the injury happened on the employer's premises, but, given the nature of the injury, that is not enough. Whatever it was which struck claimant's eye had an unknown etiology. Witt's testimony that there was always something blowing "because of the building" was altogether conclusory. A building cannot create a wind. The most it could do would be either to block it or alter its course. Wind is a natural phenomenon to which all persons are equally exposed, and it is characteristic of wind to pick up debris and carry it for long distances.

The effect of the Commission's order in this case, as confirmed by the circuit court and affirmed by this court, is to make the employer an insurer of all injuries resulting from natural phenomena. Such is not the law.

An extreme case involving a death from a tornado is found in *Decatur-Macon County Fair Association v. Industrial Com.* (1977), 69 Ill. 2d 262, 371 N.E.2d 597. In that case the supreme court denied compensation, saying:

> "While the courts of this country have not reached entirely uniform conclusions in considering whether injuries resulting from tornadic winds arose 'out of and in the course of employment' as that phrase is used in workmen's compensation acts (see Annot., *Workmen's Compensation: Injury or Death Due to Storms,* 42 A.L.R.3d 385 (1972); see also 1 A. Larson, Workmen's Compensation sec. 8.00 *et seq.* (1972)), most jurisdictions have recognized that, before compensation can be awarded, there must be some peculiar or increased risk in the employee's duties which exposes him to special or greater danger from the elements (42 A.L.R.3d 385, 391). This court has consistently adhered to that interpretation. *Inland Steel Co. v. Industrial Com.* (1968), 41 Ill. 2d 70; *Eisner Food Stores v. Industrial Com.* (1965), 33 Ill. 2d 474; *Abell Chevrolet Co. v. Industrial Com.* (1939), 371 Ill. 76; *Abell Chevrolet Co. v. Industrial Com.* (1939), 370 Ill. 460; *Central Illinois Public Service Co. v. Industrial Com.* (1920), 291 Ill. 256." 69 Ill. 2d 262, 267, 371 N.E.2d 597.

In my opinion the rationale of *Fair Association* applies to the instant case.

I would reverse the award.